PACIFIC GAS & ELECTRIC CO. v. CITY AND COUNTY OF
SAN FRANCISCO.

(District Court, N. D. California, Second Division. December 17, 1913.)

No. 27.

1. INJUNCTION (§ 153*)—TEMPORARY INJUNCTION—GAS RATES—IMPOUNDING
FUNDS—BONDS.

Where complainant gas and electric company filed a bill to restrain the
enforcement of a city ordinance fixing rates for the fiscal year beginning
July 1, 1913, on the ground that the rates were confiscatory, and applied
for a temporary restraining order pending the application for an injunc-
tion pendente lite, complainant, as a condition to the granting of such
order, would not be required to pay into court the excess of the rates
charged over those fixed by the ordinance for the benefit of consumers in
case the bill should be dismissed, but would be required to file monthly
statements and execute bonds from time to time for the refund of such
excess in case relief should be denied.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 338, 339; Dec.
Dig. § 153.*]

2. GAS (§ 14*)—RATE ORDINANCE—JURISDICTION.

While a court of equity may restrain the enforcement of an ordinance
fixing rates to be charged by a public service corporation which are con-
fiscatory or unreasonable, the court may not itself fix a reasonable rate.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig.
§ 14.*]

3. INJUNCTION (§ 153*)—PUBLIC SERVICE CORPORATION—RATES.

Where a public service corporation sued to restrain the enforcement of
a rate ordinance passed for the fiscal year beginning July 1, 1913, on
the ground that it was confiscatory, and applied for a temporary restrain-
ing order until an application for an injunction pendente lite could be
heard, the court, as a condition to the granting of such order, could not
direct that the rates to be charged in the meantime should not exceed
those fixed in an ordinance for the preceding year, which had expired,
but could vacate the restraining order and leave complainant at the mercy
of the ordinance sought to be annulled, in case it sought to charge an ob-
viously unconscionable rate, under the rule that he who seeks equity must
do equity.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 338, 339; Dec.
Dig. § 153.*]

In Equity. Suit by the Pacific Gas & Electric Company against
the City and County of San Francisco. On application of defendant
to impound certain funds pendente lite. Denied, and order entered re-
quiring complainant to give bonds.

William B. Bosley and C. P. Cutten, both of San Francisco, Cal., for
complainant.

Percy V. Long, City Atty., and Jesse H. Steinhart, Asst. City Atty.,
both of San Francisco, Cal., for defendant.

VAN FLEET, District Judge. An ordinance of the board of su-
pervisors of the defendant municipality, fixing gas rates for the fiscal
year beginning July 1, 1913, being attacked by the bill as violative of
complainant's rights under the fourteenth amendment to the Consti-

tution, a temporary restraining order was granted, arresting its enforcement until the application for an injunction pendente lite could be heard. The defendant, not being ready to proceed with the hearing of the latter application, asks that the restraining order be so modified as to require that the moneys collected by the complainant from the consumers, pending the restraint, in excess of the rates fixed by the ordinance, be impounded in a depositary, and retained under the control of the court until such time as it shall be eventually determined whether such fund is to go to the complainant or be returned to the consumers, dependent upon the determination of the question as to the validity of the ordinance.

[1] The motion being resisted by the complainant, the question presented is how best to maintain the status quo and preserve the respective rights of the parties, without injustice to either, while the validity of the ordinance remains in suspense. Different methods have been adopted by the courts to attain that end. Until comparatively recently, the usual, if not the invariable, practice has been to require a bond from the complainant utility for the benefit of the consumer, upon which, it being determined that the restraint was unwarranted, the latter may sue for any loss suffered through the ordinance rate being exceeded; and, in the larger number of cases, this method is substantially effective. In some instances, however, involving, like the present, large bodies of consumers, this mode of protection, while sufficient for the utility, has been deemed or found inadequate for the consumer, since where the amount of the loss to an individual consumer, as is not infrequently the case, is comparatively insignificant, it makes the expense of an action for its recovery onerous and burdensome, if not practically prohibitive, and thus leaves him without an efficient remedy. This being recognized, the courts, in seeking a more effective way to protect the consumers in such cases, have in a few instances adopted the impounding method now sought by the defendant. Such was the order in Consolidated Gas Co. v. Mayer (C. C.) 146 Fed. 150, involving gas rates in the City of New York, which was followed in Buffalo Gas Co. v. City of Buffalo (C. C.) 156 Fed. 370. Thereafter Judge Farrington adopted that course in the more recent case in this district of Spring Valley Water Co. v. City & County of San Francisco (C. C.) 165 Fed. 667; and this has been followed in the subsequent litigation between that corporation and the city, and in one or two other instances. It was thought and hoped that the tying up of the fund in this manner, besides affording fuller protection to the consumer, would have the effect of inducing a greater expedition of the parties in pushing the litigation to an early conclusion. But whatever the experience in other districts, this hope has not been realized here. The Spring Valley litigation, for instance, is apparently no nearer a condition of final determination than when it was begun. It is true perhaps with reference to that particular litigation that the indisposition of the parties to proceed to have the cases determined has, to some extent, arisen from the pending efforts to effect a transfer of the property of the water company to the city; but, whatever the cause of the long procrastination, it has resulted in the accumulation of a very

large fund under the impounding requirement, which has become a source or more or less anxiety and disturbance to the court. As such a fund is not regarded as a proper subject for the registry of the court, the only practical way of securing its safe-keeping is by requiring its deposit in a bank or banks; but, obviously, when so kept its safety can be no more assured than the solvency of the institution with which it is kept. In the Spring Valley Cases the fund has grown so great that the court has felt impelled, in order to avoid the risk necessarily incident to keeping the entire sum in one bank, to order its distribution among the different banks in the city designated as depositaries in bankruptcy; but manifestly this is but distributing the risk of loss, and not avoiding it. Moreover, since the fund must of necessity be deposited practically on call, the banks are not disposed, nor could they be expected, to pay more than a merely nominal rate of interest for the use of the money while in their hands. As a result, while the party eventually found entitled to the fund, whether it be the utility or the consumer, is deprived of the use of his money for an indefinite period, he can hope, at the end of the litigation, to receive little, if anything, more than the principal, with no adequate return for its use, which looks very much like taking a man's property without just compensation.

These are some of the defects developed in the practical working the impounding scheme. Others, I think, could readily be suggested if necessary.

Happily, however, I am of opinion that a more satisfactory solution of the question is afforded by the method adopted in the two very recent cases in the District of Arizona of Bonbright v. Geary et al. (Equity No. 9), and Kelley v. Geary et al. (Equity No. 10) 210 Fed. 44, decided on November 19th, since the present motion was submitted. In those cases injunctions were sought to restrain the enforcement of an order of the Corporation Commission of the state fixing electric light rates in the city of Phœnix. The motion for preliminary injunction was heard before three judges, the defendants being a state board. In granting the injunction careful consideration was given to the question presented here, and Judge Morrow, speaking for the court, said:

"In the meantime the status quo should be maintained. In making this order, however, we must take into consideration the possibility that upon a careful consideration of all the facts in the case the court may reach the conclusion that the findings and orders of the Corporation Commission are substantially correct, and for that contingency we must require security that will fully protect the customers of the company in their rates. This is an embarrassing and a difficult problem to deal with."

And referring to the difficulties arising under the impounding method, it is concluded:

"We have come to the conclusion, however, that the order we will make in this case will dispose of that question effectively and secure substantial justice to all concerned."

The court then proceeds to require the giving of a sufficient bond on the part of the Electric Company, with provision in the order that the company shall, on or after the first of each month, file with the clerk

of the court a sworn statement showing the actual amount collected from consumers during the month, and what would have been collected under the rates fixed by the suspended order; that upon final decree, if it shall be determined that the order of the Commission is valid, then the company shall, within a definite time to be fixed in the decree, pay into court the full amount collected by it in excess of the rates fixed by the order, together with legal interest thereon from the date of its collection, such amount, principal, and interest to be distributed and returned to the consumers through a special master to be named by the court.

It will be readily perceived, I think, that this method presents decided advantages to both parties over those derived from the impounding of the fund in a bank, and is no less secure. The complainant, being required to furnish adequate bonds to secure its eventual repayment, is given the use of the moneys collected pending the determination of its final destination, and it may thereby be employed for the benefit of the utility and the consumer, as well in the maintenance and upkeep of the plant, instead of lying idle, benefiting no one but the bank in which it would otherwise be deposited; and, upon its being determined that the utility has no right to the fund, it is required to pay it into court, with legal interest, to be returned to the consumer through the instrumentality of the court, and without the expense or necessity of an action for its recovery. If by reason of delays in prosecuting the suit the fund accumulates beyond the amount of the bond first required, it is always within the power of the court, upon proper suggestion, to require additional security to be given, and the amount thus kept fully covered and protected. In the end, if the consumer is adjudged entitled to a refund, he gets back, not only his principal, but an adequate compensation for its use; while the utility cannot complain, since, having had the use of a fund to which it is found not to have been entitled, it is but just that it should be required to pay for such use. This result would certainly seem to be more in accord with the principles of equity than that which may be had under the impounding requirement.

I am of opinion, therefore, that a modification of the present order to conform with that granted in the Arizona case will afford more effectual protection to both the defendant and its consumers than that requested by defendant.

[2] Defendant also asks that the order be further so modified as to prohibit the complainant, pending the restraint, from collecting rates in excess of those fixed by the board of supervisors for the previous fiscal year of 1912–1913. But obviously the court would not be justified in making such a modification. The ordinance fixing rates for that year has expired by limitation, and those rates, therefore, no longer exist as legal rates. For the court to so modify the order would be tantamount to itself undertaking to fix a rate, a thing which it may not competently do. Moreover, since the rates for that year, or the latter half of it, were substantially the same as the rates fixed by the present ordinance, such a modification would be practically equivalent to determining on this preliminary motion the substantive question in-

volved in the controversy—whether the rates of the present ordinance are such as to furnish adequate compensation for the service.

[3] But while the court cannot undertake to do what defendant asks in that regard, it is not without power to protect defendant and its consumers against any effort by complainant to charge a rate palpably and obviously unconscionable, since upon such fact being brought to its attention, it is always within the power of the court to vacate the restraining order and leave the complainant at the mercy of the ordinance sought to be annulled. He who seeks equity must do equity.

I deem it not inopportune to add that, in my judgment, the difficulties growing out of the question here presented could be largely avoided or reduced to a minimum by a greater diligence in pushing these rate-fixing cases to a conclusion. Indeed the question of maintaining the status quo only becomes a serious one because of the long delay usually experienced in having such cases prepared for final hearing—something for which, so far as my observation goes, there exists no adequate reason inhering necessarily in their nature. As counsel are well aware, this delay does not rest with the court. By reason of the fact that these cases usually involve numerous and complicated questions of fact, the Supreme Court has indicated that they are proper cases to be sent to the master for the taking of the evidence and finding the facts. Chicago, etc., R. Co. v. Tompkins, 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417. This can be done immediately the pleadings are in, and the master will be found ready and willing to give them early hearing; and when in a state for final hearing the court is always ready to lend its aid to facilitate a prompt determination. But beyond this the court is powerless, since it does not lie with it to prepare a case for presentation, nor can it decide it until ready for submission. I make these suggestions in no censorious spirit, but with the hope that in the future in disposing of this class of litigation, involving, as it always does, questions of public interest, it may be found compatible with the other obligations of counsel and the court to give it a readier disposition.

An order will be entered granting a modification of the restraining order in accordance with the suggestions herein indicated. Such an order counsel may prepare.