IN THE MATTER OF THE ASSESSMENTS FOR TAX YEAR 2012 OF CERTAIN PROPERTIES



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE ASSESSMENTS FOR TAX YEAR 2012 OF CERTAIN PROPERTIES

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE ASSESSMENTS FOR TAX YEAR 2012 OF CERTAIN PROPERTIES
2021 OK 7
Case Number: 118243
Decided: 02/09/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 7, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

IN THE MATTER OF THE ASSESSMENTS FOR TAX YEAR 2012 OF CERTAIN PROPERTIES OWNED BY CLIFTON THRONEBERRY AND E. W. CROWE, TRUSTEES OF PIPELINE INDUSTRY BENEFIT FUND AND LOCAL NO. 798 JOURNEYMEN AND APPRENTICES PLBG & PIPEFITTING, Petitioners/Appellees,
v.
JOHN A. WRIGHT, TULSA COUNTY ASSESSOR, Respondent/Appellant. 

APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY

Taxpayers were successful in their ad valorem tax protest proceeding in the District Court and in a subsequent appeal adjudicated by the Court of Civil Appeals. After appellate remand, taxpayers sought an award of postjudgment interest pursuant to 12 O.S. § 727.1, and the Tulsa County Assessor stated interest on the protested tax payments should be based pursuant to 68 O.S. § 2884. The Honorable Linda G. Morrissey, District Judge, granted the taxpayers' motion. Tulsa County Assessor appealed and Supreme Court retained the appeal sua sponte. We hold: the general postjudgment statute, 12 O.S. § 727.1, does not apply to taxpayers' ad valorem tax protest appeal, and the procedure for interest on taxpayers' protested tax payments is provided by the ad valorem statute, 68 O.S. § 2884.

DISTRICT COURT JUDGMENT REVERSED; CAUSE REMANDED TO DISTRICT
COURT FOR ADDITIONAL PROCEEDINGS CONSISTENT WITH OPINION

Leisa S. Weintraub, General Counsel, Tulsa County Assessor's Office, Tulsa Oklahoma, for Appellant.

Kelly F. Monaghan & Lori Gilliard, Holloway Monaghan King, Tulsa, Oklahoma, for Appellees.

EDMONDSON, J.

¶1 Taxpayers were successful with their ad valorem tax protest appeal and they sought an award of postjudgment interest pursuant to 12 O.S. § 727.1. Their motion was granted by the District Court. We hold the taxpayers may not use the general statute for postjudgment interest, 12 O.S.Supp.2013 § 727.1, for an award of interest on the amount they recovered in an ad valorem tax protest appeal. The specific statute, 68 O.S.Supp.2015 § 2884, which was used by the Tulsa County Assessor to determine taxpayers' interest provides the proper procedure for payment of accrued interest on taxpayers' protested ad valorem tax refund payment. The holding in State ex rel. Oklahoma Employment Security Commission v. Sanders, 1956 OK 262, 304 P.2d 287, to the extent it may authorize application of a general postjudgment interest statute to a refund in an ad valorem tax protest appeal, is disapproved, and shall not apply when an ad valorem statute, such as 68 O.S.Supp.2015 § 2884, specifically provides for investment of a taxpayer's protested tax payment and payment of the accrued interest to a taxpayer. The record on appeal does not clearly indicate taxpayers have received their refund with interest as provided by 68 O.S. § 2884. The District Court judgment awarding postjudgment interest pursuant to 12 O.S.Supp. § 727.1 to taxpayers is reversed. The matter is remanded for additional proceedings consistent with our opinion.

I. District Court Controversy

¶2 Property owners (taxpayers) appealed ad valorem tax assessments made during 2012-2015 to the Tulsa County District Court after their appeals to the Tulsa County Board of Equalization were denied. Taxpayers were successful in the District Court appeal by showing one parcel of property was exempt and a second parcel partially exempt from ad valorem taxation. The District Court determined the amounts of the tax refund and stated the Tulsa County Treasurer "pay the Petitioners interest on such amounts as allowed by law."[1]

 

¶3 The Tulsa County Assessor appealed and the Court of Civil Appeals affirmed the District Court's judgment. In the Matter of Assessment for Tax Year 2012, etc. v. Yazel, 2019 OK CIV APP 2, 432 P.3d 1071. Mandate issued January 16, 2019, and on May 8, 2019, taxpayers filed a motion in the District Court for postjudgment interest. The motion relied on a statute and an opinion from this Court, 12 O.S. § 727.1 and State ex rel. Oklahoma Employment Security Commission v. Sanders, 1956 OK 262, 304 P.2d 287.[2]

 

¶4 The Tulsa County Assessor responded to the motion for postjudgment interest and stated taxpayers had received "claim forms prepared and mailed to you on February 22, 2019 refunding taxes paid under protest, along with accrued interest."[3] The county assessor's response included correspondence from counsel for taxpayers stating the taxpayers objected to the assessor calculating interest "based upon the Treasurer's investments of such funds as provided under 68 O.S. § 2884," rather than "the postjudgment rate of interest as allowed by 12 O.S. § 727.1."[4] The county assessor relied on a statute and an opinion of the Court of Civil Appeals, 68 O.S. § 2884, and Bd. of Educ., Woodward Pub. Schools v. Hensley, 1983 OK CIV APP 31, 665 P.2d 327. The county assessor also relied on an argument stating a specific procedure required by the ad valorem provisions in Title 68 of the Oklahoma Statutes controlled the more general provisions providing interest on a judgment in Title 12 of the Oklahoma Statutes.

¶5 Taxpayers replied and argued that in Sanders the Court rejected the specific-controls-general argument when it concluded interest on a judgment against a state entity should be paid based upon the interest-on-judgments statute in 15 O.S.1951 § 274, and this general statute controlled the specific statute at issue in Sanders, 40 O.S.1951 § 224.[5] The assessor disagreed with taxpayers' analysis.

¶6 The District Court granted taxpayers' motion for postjudgment interest pursuant to 12 O.S. § 727.1 and awarded $4,385.67 for interest on one parcel and $38,215.29 for interest on a second parcel. The Tulsa County Assessor appealed and this Court sua sponte retained the appeal.

II. Summary of Appellate Controversy

¶7 The parties' appellate briefs in this Court rely on different current statutes and different court opinions spanning approximately sixty-five years. A party's reliance on a particular opinion requires an examination of the context of the opinion in relation to both (1) the historical development of the jurisprudence of a taxpayer's claim in equity for interest in a tax refund proceeding, and (2) the subsequent creation of statutory language relating to investment of protested taxes in funds bearing interest while a taxpayer's refund proceeding is adjudicated, and the payment of that interest to a successful protesting taxpayer.

¶8 Although the parties do not explain an historical context for authorities they cite, historical context may be a component for judicial application of legislative intent.[6] We are aware of issues which may arise when using historical events to explain a legal text.[7] While we do not improperly conflate historical context or development of different areas of jurisprudence with a specific legislative intent for a particular legislative enactment, there is no doubt that historical events may have explanatory authority when used as part of a textual analysis of a specific legislative enactment.[8]

III. Analysis of Parties' Arguments:
A. Statutes

¶9 Taxpayers state the postjudgment interest provided by "12 O.S. § 727.1" should be applied. The version of § 727.1 in effect on December 13, 2016, amended the 2013 version. The first portion of the statute relating to postjugment interest states as follows.

A. 1. Except as otherwise provided by this section, all judgments of courts of record, including costs and attorney fees authorized by statute or otherwise and allowed by the court, shall bear interest at a rate prescribed pursuant to this section.

2. Costs and attorney fees allowed by the court shall bear interest from the earlier of the date the judgment or order is pronounced, if expressly stated in the written judgment or order awarding the costs and attorney fees, or the date the judgment or order is filed with the court clerk.

B. Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

C. The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

D. If a rate of interest is specified in a contract, the rate specified shall apply and be stated in the journal entry of judgment. The rate of interest shall not exceed the lawful rate for that obligation. Postjudgment interest shall be calculated at the contractual rate and accrued in the same manner as prescribed in subsection C of this section.

12 O.S.Supp.2013 § 727.1 (A), (B), (C), & (D).

The statute next provides for prejudgment interest, § 727.1 (E) & (F),[9] then "if exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights," 727.1 (G),[10] then "if a judgment is rendered establishing the existence of a lien against property and no rate of interest exists," § 727.1 (H),[11] and next for the method for computing postjudgment interest, § 727.1 (I) & (J). Paragraphs (I) & (J) state as follows.

I. For purposes of computing postjudgment interest as authorized by this section, interest shall be the prime rate, as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%). For purposes of computing prejudgment interest as authorized by this section, interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year.

J. For purposes of computing postjudgment interest, the provisions of this section shall be applicable to all judgments of the district courts rendered on or after January 1, 2005. Effective January 1, 2005, the method for computing postjudgment interest prescribed by this section shall be applicable to all judgments remaining unpaid rendered prior to January 1, 2005.

12 O.S.Supp.2013 § 727.1 (I) & (J).

The last paragraph of § 727.1 contains a provision for computing prejudgment interest.12 O.S.Supp.2013 § 727.1 (K).[12]

¶10 Section 727.1 provides that "judgments . . . against this state or its political subdivisions, including counties, . . . shall bear interest during the term of judgment at a rate prescribed pursuant to this section from the date of rendition." It further provides this postjudgment interest shall accrue until the judgment is paid. Taxpayers argue this language applies to the ad valorem tax refund judgment. Taxpayers also argue they are entitled to prejudgment interest pursuant to 68 O.S. § 2884.

¶11 The county assessor argues interest is paid to a taxpayer as provided by "68 O.S. § 2884." The two versions of section 2884 in effect during taxpayers' controversy are the 68 O.S.2011 § 2884 and the version amended in 2015, 68 O.S.Supp.2015 § 2884.[13] The 2015 version provides as follows.[14]

A. The full amount of the taxes assessed against the property of any taxpayer who has appealed from a decision affecting the value or taxable status of such property as provided by law shall be paid at the time and in the manner provided by law. If at the time such taxes or any part thereof become delinquent and any such appeal is pending, it shall abate and be dismissed upon a showing that the taxes have not been paid.

B. When such taxes are paid, or by December 31, whichever is earlier, the persons protesting the taxes shall give notice to the county treasurer that an appeal involving such taxes has been taken and is pending, and shall set forth the total amount of tax that has been paid under protest or required by law to be paid prior to April 1 that will be paid under protest. The notice shall be on a form prescribed by the Tax Commission. If taxes are paid in two equal installments and the amount paid under protest does not exceed fifty percent (50%) of the full amount of assessed taxes, all protested taxes shall be specified in the second installment payment. If such amount does exceed fifty percent (50%) of the full amount of assessed taxes, then the portion of protested taxes that exceeds fifty percent (50%) of the full amount of assessed taxes shall be specified in the first installment payment and the entire second installment shall be specified to be paid under protest. The taxpayer shall attach to such notice a copy of the petition filed in the court or other appellate body in which the appeal was taken. For railroads, air carriers, and public service corporations, the amount of taxes protested shall not exceed the amount of tax calculated on the protested assessed valuation specified in the complaint filed pursuant to the provisions of subsection A of Section 2881 of this title.

C. It shall be the duty of the county treasurer to hold taxes paid under protest separate and apart from other taxes collected. Any portion of such taxes not paid under protest shall be apportioned as provided by law. Except as otherwise provided for in this subsection, the treasurer shall invest the protested taxes in the same manner as the treasurer invests surplus tax funds not paid under protest, but shall select an interest-bearing investment medium which will permit prompt refund or apportionment of the protested taxes upon final determination of the appeal. In cases where the amount of the protested ad valorem taxes by a taxpayer is in excess of Fifteen Thousand Dollars ($15,000.00), the taxpayer may elect to choose the type of investment and where the investment of the protested funds will be deposited as long as the investment is of a type authorized for the county, the depository institution qualifies as a county depository, and the depository institution is located in the applicable county.

D. 1. Prior to January 31 of each year, the county treasurer shall determine the amount of ad valorem taxes paid under protest and those ad valorem taxes that will be paid under protest pursuant to subsection B of this section. The county treasurer shall then notify the State Auditor and Inspector of the total amount of paid protested ad valorem taxes and anticipated protested ad valorem taxes, the total amount of protested taxes and anticipated protested taxes by each individual taxpayer, and how such paid protested ad valorem taxes and anticipated protested ad valorem taxes would have been apportioned to each school district and technology center school district by fund had such amount of protested ad valorem taxes not been protested.

2. The State Auditor and Inspector shall compile all of the information submitted by the county treasurers in a format which shall set forth the total amount of paid and anticipated protested taxes for each school district and technology center school district by fund and a total for each school district and technology center school district by fund. This information shall then be submitted by the State Auditor and Inspector to the State Superintendent of Public Instruction, the Director of the Oklahoma Department of Career and Technology Education, the Speaker of the House of Representatives, and the President Pro Tempore of the Senate. If any of the information submitted to the State Auditor and Inspector changes after being submitted, the county treasurer shall notify the State Auditor and Inspector and the State Auditor and Inspector shall submit revised information to the parties enumerated in this paragraph within thirty (30) days of such change.

3. Within ten (10) days of the release of the escrowed ad valorem taxes by the county treasurer, as required by subsection E of this section, the county treasurer shall submit a schedule showing the disposition of the released funds, separated by fund for each school district and technology center school, to the State Auditor and Inspector. The State Auditor and Inspector shall certify the apportionment schedule and transmit a copy to the State Superintendent of Public Instruction and the Director of the Oklahoma Department of Career and Technology Education.

4. The State Auditor and Inspector shall promulgate any necessary rules to implement the provisions of this subsection.

E. 1. In cases involving taxpayers other than railroads, air carriers, or public service corporations, if upon the final determination of any such appeal, the court shall find that the property was assessed at too great an amount, the board of equalization from whose order the appeal was taken shall certify the corrected valuation of the property of such taxpayers to the county assessor, in accordance with the decision of the court, and shall send a copy of such certificate to the county treasurer. Upon receipt of the corrected certificate of valuation, the county assessor shall compute and certify to the county treasurer the correct amount of taxes payable by the taxpayer. The difference between the amount paid and the correct amount payable, with accrued interest, shall be refunded by the treasurer to the taxpayer upon the taxpayer filing a proper verified claim therefor, and the remainder paid under protest, with accrued interest, shall be apportioned as provided by law.

2. If upon the final determination of any appeal, the court shall find that the property of the railroad, air carrier, or public service corporation was assessed at too great an amount, the State Board of Equalization from whose order the appeal was taken shall certify the corrected valuation of the property of the railroads, air carriers, and public service corporations to the State Auditor and Inspector in accordance with the decision of the court. Upon receipt of the corrected certificate of valuation, the State Auditor and Inspector shall certify to the county treasurer the correct valuation of the railroad, air carrier, or public service corporation and shall send a copy of the certificate to the county assessor, who shall make the correction as specified in Section 2871 of this title. The difference between the amount paid and the correct amount payable with accrued interest shall be refunded by the treasurer upon the taxpayer filing a proper verified claim, and the remainder paid under protest with accrued interest shall be apportioned according to law.

F. If an appeal is upon a question of valuation of the property, then the amount paid under protest by reason of the question of valuation being appealed shall be limited to the amount of taxes assessed against the property for the year in question less the amount of taxes which would be payable by the taxpayer for that year if the valuation of the property asserted by the taxpayer in the appeal were determined by the court to be correct. If an appeal is timely filed by a taxpayer pursuant to subsection A of Section 2880.1 of this title, the amount of taxes payable by the taxpayer shall not exceed the amount based upon the value originally submitted by the assessor to the county board of equalization. If an appeal is timely filed by the county assessor pursuant to subsection A of Section 2880.1 of this title, the amount of taxes payable by the taxpayer shall not exceed the amount of taxes based upon the value assessed by the county assessor and submitted to the board of equalization.

G. If an appeal is upon a question of assessment of the property, then the amount paid under protest by reason of the question of assessment being appealed shall be limited to the amount of taxes assessed against the property for the year in question less the amount of taxes which would be payable by the taxpayer for that year if the assessment of the property asserted by the taxpayer in the appeal was determined by the court to be correct.

68 O.S.Supp.2015 § 2884.

¶12 The county assessor argued an ad valorem tax protest appeal from a county board of equalization to a District Court is provided by 68 O.S. § 2880.1,[15] and then an appeal from a District Court to the Supreme Court.[16] Section 2884 provides for a county treasurer segregating taxes which are paid under protest with an appeal, and investing these protested taxes in an interest-bearing investment.[17] Section 2884 provides this investment must "permit prompt refund" "upon final determination of the appeal."[18] Section 2884 provides the taxpayer may elect to choose the type of investment and where the investment of the protested funds will be deposited when the protested ad valorem taxes are in excess of $15,000.00.[19] This section also provides that if the property was assessed at too great an amount, then the amount of the overpayment shall be refunded with interest.[20]

¶13 Taxpayers argued the language in § 2884 stating "upon final determination of the appeal" refers to the journal entry of judgment of a District Court, and such language makes the § 2884 interest a form of prejudgment interest. The county assessor argued the interest provided by § 2884 applies from payment of the protested tax until the taxpayer files a proper verified claim after a county assessor has computed and certified the proper assessment to the county treasurer. This event occurred in the present controversy after the appellate remand to the District Court upon conclusion of the appeal in In the Matter of Assessment for Tax Year 2012, etc. v. Yazel, 2019 OK CIV APP 2, 432 P.3d 1071.

III. Analysis of Parties' Arguments:
B. Construing the Statutes by the Parties and the Standard of Review

¶14 The parties disagreed on which canon of statutory construction should apply. The county assessor argued postjudgment interest language in 12 O.S.Supp.2013 § 727.1 conflicted with § 2884. Further, because 68 O.S. § 2884 is a specific statute for ad valorem tax protest procedure its language controlled the more general statute, 12 O.S. § 727.1, which the taxpayers invoked to support their view. However, taxpayers argued no conflict existed between 68 O.S. § 2884 and 12 O.S. § 727.1, and the statutes must be construed in harmony by construing § 2884 as authorizing prejudgment interest and § 727.1 as authorizing postjudgment interest.

¶15 Legislative intent controls statutory interpretation.[21] This intent is usually expressed by the plain meaning of the statutory language.[22] We examine a whole legislative act in light of its general purpose and object,[23] and give effect to the legislature's intent by construing and applying the language in a manner which does not destroy the obvious purpose and design of the statutory language.[24] We start with a reading of the statutory language which gives full force and effect to each relevant statutory provision expressing the legislature's intent by the plain meaning of the language therein.[25] We employ rules of statutory construction when legislative intent cannot be ascertained as in a case of ambiguity, conflict, or uncertainty in meaning, and a statute contains an ambiguity if it is susceptible to more than one meaning.[26]

¶16 A well-known canon of statutory construction states a specific statute controls a general statute on the same subject.[27] This canon only applies if the two statutes conflict with one another when they may not be harmonized.[28] This analysis starts with the language of the statutes at issue, and whether statutory language is ambiguous, conflicting, or its meaning uncertain, and this analysis presents a question of law reviewed de novo by the Court.[29]

¶17 Taxpayers do not expressly state § 2884 is ambiguous, but such is the effect of their argument. They argue the term "interest" in 68 O.S. § 2884 means "prejudgment interest." In other words, the legislature omitted the qualifying term "prejudgment" in the different enacted versions of § 2884, and "accrued interest" is an ambiguous term when § 2884 does not distinguish between prejudgment and postjudgment interest. Taxpayers rely on the presence of this ambiguity in § 2884 as a basis for their argument no conflict exists between interest awarded by 12 O.S. § 727.1 and interest awarded by 68 O.S. § 2884.

¶18 The assertion of ambiguity in § 2884 is presented by taxpayers in the context of their argument stating any doubt as to possible meaning in § 2884 must be resolved in favor of the taxpayers. Taxpayers rely on In re Holt, 1997 OK 12, 932 P.2d 1130, 1134, and Video Gaming Techs., Inc. v. Tulsa Cty. Bd. of Tax Roll Corrs., 2019 OK 84, ¶ 11, 455 P.3d 918, 921, and statements stating doubts concerning tax laws are to be resolved in favor of a taxpayer.

¶19 This argument for a construction of a tax statute in favor of these taxpayers is not applicable for several reasons, three of which we may immediately note since they are necessarily raised by taxpayers' argument. First, when language is ambiguous, uncertain, conflicting, or creating doubt in a tax statute exacting a tax, then the language may be construed against the state when such construction may be accomplished without a discriminatory effect.[30] We have stated an explanation for this rule: "The rule means that the provisions of statutes levying taxes will not be extended by implication beyond the clear import of the language used."[31] The 68 O.S. § 2884 controversy presented by taxpayers does not involve the imposition of a tax by implication upon these particular taxpayers.[32]

¶20 Secondly, doubts must arise from ambiguous, conflicting, or uncertain statutory language in the tax law itself, and not from a failure by a party in applying the plain and ordinary meaning of language in a tax statute.[33] As we explain herein, the tax statute at issue, 68 O.S. § 2884, contains no ambiguity, uncertainty, or internal conflict because the term "interest" therein was designed by the legislature to provide interest during the entire time a tax protest appeal is being litigated, with the legislative goal of providing what is essentially a combined prejudgment and postjudgment interest.

¶21 Thirdly, this Court has previously explained the ad valorem tax remedy procedures provide exclusive means for judicial redress of a legal claim within the scope of the ad valorem statutory remedies.[34] The exclusivity of this ad valorem statutory procedure over a general civil statutory procedure occurs, for example, when the ad valorem statute is not silent on the legal issue, i.e., the legislature has affirmatively stated in the ad valorem statute how the legal issue should be determined.[35] Again, we explain herein the legislative goal in § 2884 is to provide interest during the entire time an ad valorem protest appeal is prosecuted by the taxpayer, and this § 2884 procedure for interest is part of the exclusive ad valorem tax protest remedy.

¶22 The county assessor's appellate briefs rely on legislative amendments to section 2884 dating from 1988. Language in § 2884 has an historical context relating to a taxpayer's equitable claim to accrued interest in certain tax protests, and as we explain herein this context supports the assessor's construction of § 2884. The historical context supports the conclusion that in a successful tax protest § 2884 paragraph (E)(1) provides "accrued interest" payable to the taxpayer calculated from the time the protested payment is deposited into the interest-bearing account until after the county assessor computes and certifies to the county treasurer the correct amount of taxes payable by the taxpayer as determined by the District Court, and when the taxpayer files a proper verified claim therefor.

¶23 The assessor's conduct required by § 2884 in computing and certifying the proper ad valorem assessment for the treasurer to use when computing "accrued interest" occurs at the conclusion of the protest proceeding, and in our case today it occurred after an appellate remand to the District Court.

¶24 When we consider taxpayers' argument relying on the phrase "upon final determination of the appeal," and the absence of the qualifying term "prejudgment" in § 2884, we may not limit our analysis to these words alone and we must consider the context of the terms.[36] When we consider the county assessor's argument alleging a conflict in statutes, we include an examination of the intent of the legislature to determine if an actual conflict exists, and this examination may include the historical context of the legislation,[37] including court opinions and previous codified versions of the legislation at issue explaining this context.[38] We must construe a statute to accomplish the legislative goals intended by the legislature.[39] Taxpayers' argument raises the issue whether their view of § 2884 accomplishes or destroys the legislative goals in § 2884.

III. Analysis of Parties' Arguments:
C. Summary - Development of Jurisprudence Before Interest in Ad Valorem Statutes

¶25 In the years prior to and including State ex rel. Oklahoma Employment Security Commission v. Sanders, the primary authority invoked by taxpayers: (1) We originally held interest was not paid on an ad valorem tax refund; (2) Federal courts authorized using equity to award interest as a form of damages in some, but not all, state tax refund controversies adjudicated in federal courts; (3) Congress created the Tax Injunction Act, 28 U.S.C. § 1341, which limited the scope of federal court controversies involving a challenge to a state tax;[40] (4) We authorized interest on a judgment against a state entity based upon both a postjudgment interest statute and these federal controversies using equity, but we did not address interest as a form of damages as the then current federal court opinions authorized; and (5) Application of the postjudgment interest statute occurred when the ad valorem statutes were silent on both the county treasurer investing the protested tax payments to earn interest and payment of interest to the taxpayer.

¶26 In the years after Sanders: (1) Payment of interest as a necessary component for an adequate state tax remedy continued to be an issue for application of 28 U.S.C. § 1341 until 1981; (2) Courts in other states created a split in authority for awarding interest on a state tax refund; (3) Our Court of Civil Appeals tied a right to interest on an ad valorem tax refund to whether the protested tax had been invested by the county treasurer; and (4) When the legislature shortly thereafter created the statute which became 68 O.S. § 2884, the scope of the statute addressed concerns raised by courts at that time when discussing interest.

III. Analysis of Parties' Arguments:
D. Introduction to Interest and State v. Sanders

¶27 Interest is defined in one Oklahoma statute as "the compensation allowed for the use or forbearance or detention of money, or its equivalent."[41] Historically, prejudgment interest served to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.[42] This historical prejudgment interest, as one type of damages, was an "element of the total liability adjudicated."[43] This prejudgment interest was calculated by the trial court and the amount was stated in the judgment.[44]

¶28 We have observed that "at common law, judgments do not bear interest,"[45] and "it is a well-settled rule that the recovery of interest on a judgment must be predicated on statute."[46] In contrast to prejudgment interest having a source in the concept of a complete compensation for a loss, postjudgment interest has its source in the concept of a penalty for delayed payment of the judgment.[47] In contrast to prejudgment interest, postjudgment interest is calculated from the date of judgment until the date of payment.[48]

¶29 The distinction between postjudgment interest and prejudgment interest is important because (1) taxpayers' arguments rely upon this distinction, and (2) taxpayers rely on our 1956 opinion in State ex rel. Oklahoma Employment Security Commission v. Sanders, supra. Sanders relied on a federal court opinion applying an equitable right to prejudgment interest as authority for holding a postjudgment interest statute applied to a judgment against a state entity. Prior to Sanders we had previously approved of postjudgment interest in an equity proceeding,[49] and of course, a general statute providing payment of interest on a court judgment usually applies to both an action at law as well as a decree in equity requiring payment.[50] The Sanders Court used a claim in equity for interest as damages in support of the Court's conclusion relating to postjudgment interest, and the distinction is important to taxpayers' arguments herein and the legislature's changes to the ad valorem statutes after Sanders.

III. Analysis of Parties' Arguments:
E. Interest in Federal Courts as a Proper Award in Equity with Some
Tax Refund Controversies, The Tax Injunction Act in Federal Court, and
From Eaton v. St. Louis to State, etc. v. Sanders

¶30 Prior to 1913, courts of equity in Oklahoma, pursuant to both statute[51] and the general equity powers, granted injunctions against the collection of taxes alleged to be illegal and void and provided tax refund relief.[52] Statutory enactments partially based upon equity procedure[53] occurred in 1913 and 1915 and resulted in this Court explaining the former injunctive relief in equity was no longer used to prevent payment of taxes alleged to be illegal when the new statutory remedy was plain, speedy, adequate, and exclusive.[54] After creation of the statutory remedies we continued to explain the availability of injunctive and declaratory relief was restricted in scope,[55] and remained for only a few types of controversies,[56] including one involving a federal constitutional right when the adequacy of a state's remedy was an issue.[57] Although an injunction in equity could not be used to prevent payment or seek a refund of a taxpayer's tax and replace the then new statutory remedies, the nature of the statutory tax refund judicial proceeding remained a proceeding governed by equitable principles[58] with the statutes providing the mandatory manner and method by which the claim for a refund was adjudicated.[59]

¶31 This mandatory statutory method for a tax refund dating from 1913-1915 did not expressly include interest to be paid to a taxpayer. Our 1925 opinion in Eaton v. St. Louis & S. F. Ry. Co.,[60] explained the taxes were paid under protest, the partes' rights were limited to the statutory tax refund procedure which did not authorize interest, and we modified the trial court's judgment so that interest on the tax refund would not be awarded.[61] At the time Eaton was decided a general statute for postjudgment interest had been in effect for several years, R.L. 1910 § 1008, but the statute was not discussed in Eaton. Although Eaton had concluded interest was not proper for the tax refund, legal authors and other courts at this time began to recognize that interest was proper based upon equitable principles in some, but not all, state tax refund controversies.

¶32 Five years after Eaton, three authors discussed equity and the propriety of federal injunctions in state tax refund cases. They stated if interest was not allowable under state law, then a taxpayer clearly suffered a loss which equity may properly prevent.[62] They relied on Judge Learned Hand's opinion in Proctor & Gamble Distributing Co. v. Sherman, 2 F.2d 165 (S.D.N.Y. 1924),[63] and his well-known observation on a taxpayer not receiving interest while the tax protest proceeding was being adjudicated.

While I have been referred to no decision on the point it seems to me plain that it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all.

Proctor & Gamble Distributing Co., 2 F.2d at 166.

The three authors also relied on a 1928 U. S. Supreme Court opinion which affirmed a U. S. Court of Appeals Ninth Circuit opinion which had explained the laws of California did not allow interest for one who recovered a wrongfully collected tax paid under protest until after judgment, and the court made a comparison to Judge Hand's opinion in Proctor & Gamble, supra, discussing a taxpayer's injury from not receiving interest for the time the tax had been paid under protest.[64] This equitable claim to interest was recognized in 1939 by the U. S. Supreme Court in Board of Comm'rs of Jackson County, Kansas, v. United States.[65]

¶33 In Board of Comm'rs of Jackson County, the Court concluded that in an intergovernmental dispute in the absence of a federal statute, and assuming applicable quasi-contract principles, i.e., equity, interest was not recovered against a state entity on an illegal state tax according to a rigid theory of compensation for money withheld; but compensatory interest may be granted based on (1) considerations of federal and state concerns, and (2) the fairness and equity of the award.[66] The Court also noted compensatory interest should be denied when granting it would be inequitable. In Board of Comm'rs of Jackson County, the Supreme Court examined a controversy arising in Kansas which, as previously noted by the Tenth Circuit Court of Appeals, had statutes similar to those in Oklahoma which did not award interest on a tax refund.[67] Although prejudgment interest was not awarded in Board of Comm'rs of Jackson County, because of fairness,[68] this same standard has been used to award prejudgment interest as a form of compensation to balance the equities in other controversies.[69]

¶34 A few years after the Supreme Court's 1939 opinion, the Tenth Circuit Court of Appeals decided controversies arising in Oklahoma and applied Board of Comm'rs of Jackson County, supra. In 1942 the federal appellate court disallowed a district court's award of interest, and the issue was not raised when the controversy was subsequently before the U.S. Supreme Court.[70] However, one year earlier in Bryan County v. United States, the Tenth Circuit Court explained the federal trial court correctly refused interest on the taxes from the date of their collection but correctly allowed judgment for equitable interest from the date of its rendition,[71] and this opinion was used by the Oklahoma Supreme Court in 1951 when awarding statutory postjudgment interest against a state entity.

¶35 In 1951, we addressed the issue of interest on a judgment against the State as "a question of first impression in this court." State ex rel. Comm'rs of Land Office v. Warden,1951 OK 334, 242 P.2d 129. Warden did not involve an ad valorem tax refund. However, in support of its rationale our Court cited the Tenth Circuit Court's opinion in Bryan County v. United States, supra, as an example when interest was allowed on a judgment against a State.[72] We stated the then general statute providing interest on a judgment applied.[73] This statute was 15 O.S.1941 § 274.[74] Which was later codified in an altered form at 12 O.S.2011 § 727.1.

¶36 A few years after Warden a taxpayer sought a refund of an overpayment of unemployment taxes plus interest in State ex rel. Oklahoma Employment Security Commission v. Sanders, 1956 OK 262, 304 P.2d 287. We relied upon Warden and 15 O.S. 1941 § 274,[75] and stated: "Much the same proposition as here was considered in the case of State ex rel. Com'rs of Land Office v. Warden, . . . wherein was held that 'Interest is recoverable on judgment against state from and after its date at legal rate.'"[76]

¶37 In our case today, taxpayers argued that Sanders rejected the specific-controls-general argument when it concluded interest on a judgment against a state entity should be paid based upon the interest-on-judgments statute in 15 O.S.1951 § 274, and thus controlled 40 O.S.1951 § 224 which provided express authority for employer refunds. Taxpayers' reading and application of Sanders herein is not correct. The 1951 refund procedure authorized an employer to recoup payments of the tax, penalties, and interest the employer had previously paid, but the §224-authorized amounts to be refunded did not expressly include either accumulated or postjudgment interest on those amounts. The statute was silent on this issue. For example, when an employer appealed the assessment "if, upon a final determination of the appeal the order assessing such contributions, penalties, and interest is reversed or modified and it is determined that said contribution or part thereof was erroneously assessed, the amount paid by the employer, shall be refunded to the employer by the Commission."[77] Sanders authorized application of the general postjudgment statute on a judgment against a state entity when the legislature had been silent on the issue of accrued and postjudgment interest on a 40 O.S.1951 § 224 appeal seeking a refund of employer contributions. Sanders did not involve a conflict between two different statutory procedures providing for interest when a statutory refund received a judicial adjudication.

¶38 In State, etc. v. Sanders, the Court's reasoning noted interest was not an expressly authorized item to be awarded by (1) a statute authorizing a refund of overpaid unemployment taxes, or (2) a statutory remedy for a refund of an ad valorem tax as interpreted by the Court in 1925 in Eaton v. St. Louis & S. F. Ry. Co., supra.[78] We concluded in Sanders that recovery of interest was prohibited on the taxpayer's overpayment of unemployment taxes, a type of prejudgment interest, but recovery of interest would be allowed on the amount of the judgment to be refunded; i.e., the postjudgment interest statute would apply.[79]

¶39 Neither Warden nor Sanders, involved an ad valorem tax refund, but in allowing postjudgment interest against the state our Court relied on the Tenth Circuit Court's opinion in Bryan County imposing a form of equitable interest on an ad valorem state tax refund judgment, and our Court also relied on 15 O.S.1941/1951 § 274, which provided interest on a court judgment. Again, when Warden and Sanders were decided the two primary ad valorem tax refund procedures, 68 O.S. 1951 § 15.48[80] and § 15.50,[81] did not provide for either (1) protested funds to be deposited into an interest-bearing fund or (2) accrued interest to be paid to a successful taxpayer.

¶40 Although Warden and Sanders temporarily settled the issue that postjudgment interest would apply to an Oklahoma tax refund judgment using a postjudgment statute against a state entity, the issue whether prejudgment interest on a protested tax payment should be considered a potential part of a tax remedy due to equity was not settled by those two opinions. The growth of using equity in a federal court to challenge a state tax had been slowed when Congress created the Tax Injunction Act of 1937, codified at 28 U.S.C. § 1341, but the Act did not stop a federal court from awarding interest in a state tax refund controversy when a state's refund procedure was adjudged deficient by the Act.[82]

¶41 For example, in 1959 and after both Warden and Sanders and the enactment of the Tax Injunction Act, a three-judge panel of the United States District Court for the Eastern District of South Carolina in United States v. Livingston, stated that: "It is well settled that a right to recover taxes illegally collected is not an adequate remedy if it does not include the right to recover interest at a reasonable rate for the period during which the taxpayer's money is withheld."[83] The federal court relied upon (1) its previous opinions (2) two opinions by the United States Court of Appeals for the Ninth Circuit,[84] one of which observed the inadequacy of postjudgment interest,[85] and (3) Judge Hand's opinion in Proctor & Gamble Distributing Co. v. Sherman, supra.[86]

¶42 A few years later in Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), the U. S. Supreme Court declined to decide "whether omission to provide interest on a successful refund application renders the state remedy here an inadequate one within the meaning of § 1341." Then in 1979 and twenty years after United States v. Livingston, the Seventh Circuit Court of Appeals in LaSalle National Bank v. Rosewell,[87] addressed what constituted a plain, speedy and efficient state remedy for the Tax Injunction Act, concluded nonpayment of interest on a state tax refund rendered a state remedy inadequate,[88] and removed the Act's bar to the federal court exercising jurisdiction in a taxpayer action seeking a state tax refund.[89]

¶43 The U. S. Supreme Court reversed the Seventh Circuit in Rosewell v. LaSalle Nat'l Bank, a 1981 opinion which explained the taxpayer's claim of no interest on a tax refund was a "substantive concern;" but the "plain, speedy and efficient remedy" requirement of the Tax Injunction Act addressed procedural concerns and requirements for state remedies.[90] While the substantive claim of a lack of interest on a state tax refund was no longer a sufficient basis for showing the absence of a plain, speedy and efficient state remedy, a claim to interest in equity remained available as a potential "substantive concern" in federal court when the court otherwise had jurisdiction because the state remedy was insufficient on another ground,[91] or the Tax Injunction Act not applicable when deciding a taxation issue.[92]

¶44 We need not delve into related issues such as listing examples of what constitutes a tax for purposes of the Tax Injunction Act and what constitutes a plain, speedy, and efficient state remedy,[93] or issues related to the Rules of Decision Act[94] and awards of interest in federal question and diversity of jurisdiction controversies,[95] or other related issues.

¶45 The importance of these federal cases to our controversy today is fivefold: (1) They recognized for some, but not all, controversies an equitable and substantive right for interest on a state tax refund as a form of damages; (2) Due to the equitable nature of the interest, the damages could be awarded from the time the taxpayer paid the protested tax payment until the taxpayer received his or her refund, or only as a form of postjudgment interest, or another period of time could be used for calculating the interest; (3) This concept of an equitable interest was used in support of reasoning by our Court in Warden and Sanders when applying a postjudgment interest statute to a refund controversy controlled by a statute which was silent on the issue of postjudgment interest; (4) This concept of an equitable and substantive interest expressly recognized from 1924 -1981 in these opinions was also being raised in tax refund controversies in the courts of several states; and (5) This jurisprudence, including Sanders, occurred prior to important changes to our ad valorem statutes which began in the 1980s.

III. Analysis of Parties' Arguments:
F. Split of Authority in States Recognizing Interest on a State Tax Refund

¶46 When the U. S. Supreme Court was deciding the lack of interest on a state tax refund could not be used as a sufficient reason for avoiding application of the Tax Injunction Act in federal courts, various state courts were deciding whether interest should be awarded on a state tax refund. For example, in Ball v. County of Los Angles (1978) 82 Cal.App.3d 312, 147 Cal.Rptr. 252, the court noted the split between states holding "there is an implied contract between the state and the taxpayer that the state will be liable for interest for the period of time it has the use of the taxpayer's money," and other states rejecting the implied contract theory and holding "there is no liability for interest on a refund in the absence of a statute that specifically creates a liability for such interest."[96]

¶47 One of the reasons used in support of not paying interest on a tax refund was based upon a court not imputing delay to the government: "the theory that a contract for interest is implied only when there is either delay or default on the part of the debtor and such delay or default will not be attributed to the government since it is presumed that the government always stands ready to pay what it owes promptly." [97] This principle was stated by the United States Supreme Court in 1879: "whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes."[98]

¶48 Not imputing delay to the government was a public policy at odds with the public policy expressed by Judge Hand in Proctor & Gamble Distributing Co., supra, which expressed the equitable and substantive inadequacy of a tax refund remedy denying interest during the time a government entity possessed a protested tax payment. The determination which of two conflicting public policies should be given prominence is ordinarily a matter within the domain of a legislative body.[99]

¶49 Related issues being litigated at this time involved payment of interest on a tax refund when no statute created authority for the government official to invest the protested taxes while the protest was being adjudicated.[100] Another issue being litigated in state courts was whether interest could be awarded in the presence of state constitutional provisions prohibiting payments from the state treasury in the absence of a legislative act or resolution authorizing interest as part of the award.[101]

¶50 During this period and prior to 1987, the two primary ad valorem tax protest statutes 68 O.S.1971 § 2467 (appeal when the assessment is alleged to be too high) and § 2469 (alleged illegality when no appeal is provided) both required protested tax payments to be held separate and apart by the officer collecting the taxes. These two statutes did not expressly state the protested payment must be invested and obtain interest, and they did not provide for payment of interest on the refund to the taxpayer. The language in the 1971 versions continued to appear through 68 O.S.1981 §§ 2467, 2469.

III. Analysis of Parties' Arguments:
G. Bd. of Educ., etc. v. Hensley, Bison, etc v. Lucas

¶51 A county treasurer investing protested taxes and a dispute as to an entitlement to the interest resulted in litigation in Oklahoma. In 1983 our Court of Civil Appeals addressed the issue when a county treasurer invested the protested tax payments and obtained interest, but the treasurer was not expressly required at that time by the ad valorem statutes to make the investment. Bd. of Educ., Woodward Pub. Schools v. Hensley, 1983 OK CIV APP 31, 665 P.2d 327. The alternative solutions championed by the parties were to award the interest to either school districts or the county general fund. The Court of Civil Appeals relied on the well-known principle stating that "The interest earned on this separate and distinct fund prior to its apportionment becomes a part of the principal of the fund which generates it."[102] This principle has been recognized by both this Court[103] and the U. S. Supreme Court.[104] The Court of Civil Appeals stated the following.

When a tax protest is filed it becomes the ministerial duty of the county treasurer to hold the money so paid. The money is held in trust by the county, either for refund or for the proper fund to which it respectively belongs. . . . When the final determination of Oklahoma Nitrogen's protest was made it was the duty of the county treasurer to apportion the entire fund, consisting of both principal and the interest it had earned, to the various entities entitled to the fund.

Bd. of Educ., Woodward Pub. Schools, 665 P.2d at 331.

This opinion was persuasive and non-precedential authority for the proposition that if a county treasurer obtained interest on a protested tax fund, then a taxpayer entitled to any refund from that fund would also be entitled to prorated interest accumulated from the date of investment until the conclusion of the protest proceeding.[105]

¶52 The issue of interest on a judgment, as opposed to interest on the fund of protested taxes, arose again in Bison Nitrogen Prod. Co. v. Lucas, 1987 OK 46, 738 P.2d 147, and we stated the following.

Appellants have also asked this Court to hold them entitled to interest on any excess taxes paid under protest, The rule in State ex rel. Okla. Employment Security Commission v. Sanders, Okl., 304 P.2d 287 (1956) applies. Appellants are not entitled to any interest on overpaid tax monies prior to the rendition of a final judgment.

Bison, 738 P.2d at 151 (emphasis added).

Bison was decided on June 2, 1987. The ad valorem tax protest procedure in effect and applied was the 1981 version of 68 O.S. § 2469, a remedy for an allegation of illegality when no appeal was provided. Section 2469 did not provide for payment of interest on the refund, but merely a refund of the amount of excess taxes paid.[106] We held postjudgment interest was applicable to a judgment for an ad valorem tax refund for the 1980 and 1981 tax years.[107]

¶53 In Bison we stated taxpayers were "not entitled to any interest on overpaid tax monies prior to the rendition of a final judgment," but we did not give any reason other than a citation to State ex rel. Okla. Employment Security Commission v. Sanders, supra. In Bison, we did not address (1) a taxpayer's right to interest based upon a county treasurer's investment, or (2) Bd. of Educ., Woodward Pub. Schools v. Hensley, supra, and the authority cited therein, or (3) whether the treasurer had invested the protested tax payments in a fund bearing interest during the Bison litigation. Although Bison relied on Sanders and like Sanders was decided when the ad valorem statute at issue, here 68 O.S.1981 § 2469, was silent on the issue of a county treasurer investing a protested tax payment and payment of interest to a taxpayer, no taxpayer herein asserts aggrieved status from the ad valorem statutory procedure for a challenge in the absence of an appeal (68 O.S.1981 § 2469), and we need not adjudicate the continued legal vitality of Bison's holding on the interest issue.

III. Analysis of Parties' Arguments:
H. Recent Amendments to Ad Valorem Statutes

¶ 54 In April 1987 the legislature started amending the ad valorem statutes after the then recent: (1) federal court litigation limiting, but not completely extinguishing, a taxpayer's equitable claims to interest as a form of damages, (2) recent decisions in other states showing disagreement on (a) an implied contract theory taxpayer's right to interest, and (b) the necessity of a statute requiring investment of protested taxes and payment of interest on a refund; and (3) an opinion by the Court of Civil Appeals recognizing a taxpayer's right to accumulated interest if the protested payment had been invested by a county treasurer.

¶55 The legislature started amending the ad valorem statutes and initially made three important changes. The Legislature amended 68 O.S. § 2467 and required (1) the protested taxes be placed "in an investment medium which will permit prompt refund," (2) the amount to be refunded to include "the difference between the amount paid and the correct amount payable with accrued interest," and (3) the procedure to be applicable to taxes paid on or after July 1, 1986.[108] Although section 2467 was repealed and renumbered in 1988, effective Jan. 1, 1992,[109] the new procedure provided in the 1987 version of § 2467 was continued by 68 O.S. § 2884, and it required the collecting officer to invest the protested tax, payment of the refund "with accrued interest," and any remainder properly taxable with its accrued interest was apportioned as provided by law.[110]

¶56 This statutory scheme followed the principle in Bd. of Educ., Woodward Pub. Schools v. Hensley, supra, which stated interest upon the protested tax would be apportioned to the taxpayer based upon the amount of taxpayer's refund. The legislature determined between conflicting public policies on the issue of paying interest on an ad valorem tax refund and provided a procedure for accomplishing payment of interest.

¶57 Section 2469, a claim of illegality when no appeal was provided, was not amended in 1987, and its renumbered version in the new ad valorem code, 68 O.S. § 2886, did not require the treasurer to invest the protested tax payment and did not provide for payment of interest. However, the legislature later referenced the two procedures, §§ 2884 & 2886 together by a 2000 amendment to 68 O.S. § 2886 which stated the procedure in § 2886 follows the procedure in 68 O.S. § 2884,[111] and this procedure continues in the current version codified at 68 O.S.2011 § 2886.

¶58 The statutory language requiring investment of the protested payment by the county treasurer and payment of "accrued interest" to the taxpayer appeared in the 1991 and 2001 versions of 68 O.S. § 2884.[112] The 2008, 2011, and 2015 versions of § 2884 (C) & (E) also provide for the protested tax payment to be invested and accrued interest paid to a taxpayer.[113]

¶59 In 2001 the treasurer was required to "invest the protested taxes in the same manner as the treasurer invests surplus tax funds not paid under protest," but the investment medium had to permit a "prompt refund."[114] This language was amended in 2008 to require the treasurer to invest tax payments in an "interest-bearing" investment which would permit a prompt refund.[115] More importantly, in 2008 the legislature expanded a taxpayer's rights by adding language giving a taxpayer the right to select an investment for a protested tax payment when in excess of Fifteen Thousand Dollars ($15,000.00). 68 O.S.Supp.2008 § 2884 (C). This language gives an important right to a taxpayer in directing investment of a protested tax payment. We decline to adopt the taxpayers' view herein which would limit a taxpayer's right to control this investment to the stage of an ad valorem tax protest appeal prior to a District Court judgment.

¶60 This portion of § 2884 (C) resolves an unstated but necessarily implied argument made by taxpayers: the rate of interest on a protested tax payment earned after a taxpayer's judgment should be treated as a "substantive concern" in equity and not a mandatory procedural element in an exclusive statutory tax remedy; and when so treated a taxpayer using a general and ordinary postjudgment statute achieves a more equitable result due to a potentially higher rate of interest. This type of equitable argument is not new.[116] The legislature provided a solution for a taxpayer concerned with the rate of interest on a protested ad valorem tax payment. When the protested tax payment exceeds $15,000.00 the taxpayer may elect the type of investment. 68 O.S. § 2884 (C).

¶61 We have addressed the taxpayers' arguments herein to determine if "accrued interest" is ambiguous as well as addressing the assessor's claim of conflicting statutes in order to determine if 68 O.S. § 2884 fails to be plain or lacks clarity for the purpose of expressing legislative intent and purpose. When the legislature has spoken and addressed a legal issue using plain, clear, unambiguous language which is within the sphere of the legislature's authority, then this Court applies the language without needing to apply rules of statutory construction.[117] We have concluded the language providing for payment of interest in 68 O.S. § 2884 is clear and controls taxpayers' claims. Taxpayers' implied claim challenging the interest rate in equity must be rejected. Equity follows the law and equity will not be used to correct a party's failure to use what the law provides.[118] Taxpayers had the option of using the procedure in § 2884 in order to obtain a higher interest rate.[119] We need not address herein whether the legislature has rationally, or by some other standard, deemed $15,000.00 as a proper threshold amount for a potential equitable interest using a de minimis standard.[120]

¶62 The phrase "final determination of the appeal" is not tied to the date the "accrued interest" shall be calculated in § 2884. The phrase "final determination of the appeal" may not be read in isolation from the rest of the statute. Generally, postjudgment interest is applied to an adjudicated obligation which creates a continuing obligation to pay from the date of the adjudication; i.e., the obligation becomes due on the date of the adjudication, unless some legal attribute of the proceeding makes the duty to pay arise at a date after the adjudication.[121] One reason the "final determination of the appeal" is not tied to the calculation of interest is because the government is still holding the protested tax payment after that date, and the obligation to pay does not arise until a corrected assessment by the county assessor is certified to the county treasurer and a taxpayer's verified claim is filed. 68 O.S.Supp.2015 § 2884 (E)(1). This verified claim includes the accrued interest and application of 12 O.S. § 727.1 is superfluous.

¶63 The language of 68 O.S. § 2884 on the issue of accrued interest is clear and free of ambiguity. When the language of a statute is plain and clear it will be followed by the Court, and when further inquiry is needed, this Court is "not free to rewrite the statute."[122] Taxpayers' argument equating "accrued interest" in § 2884 with prejudgment interest incorrectly rewrites the plain language of 68 O.S. § 2884.

IV. Summary

¶64 When the Court decided State ex rel. Oklahoma Employment Security Commission v. Sanders, 1956 OK 262, 304 P.2d 287, the ad valorem statutes were silent on both a county treasurer's duty to invest the protested tax payment and payment of accrued interest to a taxpayer. We have recently explained that we apply "the specific tax statute authorizing interest which is applicable to the specific controversy," and we held interest was not to be awarded when the specific statute authorizing payment from a particular fund did not also authorize interest from the fund.[123] The statutory authority for payment of the refund upon a successful tax protest is based upon the same statute providing for investment of the segregated and protested tax payment to earn interest, as well as a corrected assessment by the county assessor certified to the county treasurer, and payment with accrued interest upon a taxpayer's verified claim. 68 O.S.Supp.2015 § 2884 (E)(1). The legislature provided for a taxpayer to receive interest on a protested ad valorem tax in 68 O.S. § 2884.

¶65 The holding in State ex rel. Oklahoma Employment Security Commission v. Sanders, 1956 OK 262, 304 P.2d 287, authorizing application of a general postjudgment interest statute to a tax refund proceeding shall not apply to an ad valorem tax protest appeal where 68 O.S.Supp.2015 § 2884 specifically provides for investment of a taxpayer's protested tax payment with payment of accrued interest.

¶ 66 The development of the jurisprudence of interest on a protested state tax refund was the subject of much litigation prior to 1987 when our legislature began making a protested ad valorem tax payment a fund to accrue interest. The litigation prior to 1987 shows that courts and legislatures were concerned with equitable and legal claims for interest the entire time a protested tax payment was held by a government entity, and not merely the categories of prejudgment and postjudgment interest. This explains, in part, why the legislature did not use the terms "prejudgment interest" and "postjudgment interest" in a statute speaking of "accrued interest" on a protested tax payment.

V. Conclusion

¶67 We hold the taxpayers may not use the general statute for postjudgment interest, 12 O.S.Supp.2013 § 727.1, for an award of interest on their refund in their ad valorem tax protest appeal. The specific statute, 68 O.S.Supp.2015 § 2884, provides the proper procedure for payment of the accrued interest on taxpayers' protested tax payments. The record on appeal does not clearly indicate taxpayers have received their refund with interest as provided in 68 O.S. § 2884.

¶68 The judgment of the District Court of Tulsa County awarding to taxpayers postjudgment interest pursuant to 12 O.S.Supp.2013 § 727.1, is reversed. The matter is remanded to the District Court for further proceedings consistent with this opinion.

¶69 CONCUR: DARBY, C.J.; KAUGER, EDMONDSON, COMBS, GURICH, and ROWE, JJ.

¶70 CONCUR IN RESULT: WINCHESTER, and KANE, JJ.

FOOTNOTES

[1] Okla. Sup. Ct. 118,243, O.R. Vol. 2, pgs. 250-273, at 271 Journal Entry of Judgment (December 13, 2016) (Tulsa Cnty. Dist. Ct., CV-2012-00795, consol. with CV-2013-01475, CV-2014-00743, CV-2015-00660).

[2] O.R. Vol. 2, pgs. 323-324, Motion for Postjudgment Interest, (May 8, 2019).

[3] O.R. Vol. 2, pgs. 353-394, 354, Respondent Tulsa County Assessor's Response to Plaintiffs' Motion for Postjudgment Interest, (May 23, 2019).

[4] O.R. Vol. 2, pgs. 353-394, 368, Respondent Tulsa County Assessor's Response to Plaintiffs' Motion for Postjudgment Interest, Exhibit 2 (May 23, 2019).

[5] O.R. Vol. 2, pgs. 399-407, 400 Petitioners' Reply in Support of Motion for Postjudgment Interest, (June 4, 2019).

[6] See the discussion infra at ¶¶ 15, 24.

[7] See, e.g., Amanda L. Taylor, et al., A Dialogue with Federal Judges on the Role of History in Interpretation, 80 Geo. Wash. L. Rev. 1889 (2012) (discussing the role of history in judicial interpretation with a panel of several federal judges); Jeffrey S. Sutton, The Role of History in Judging Disputes About the Meaning of the Constitution, 41 Tex. Tech L. Rev. 1173 (2009) (Judge Sutton's views on the issue); Robert W. Gordon, Historicism in Legal Scholarship, 90 Yale L.J. 1017 (1981) (discussing "historicism," as "the perspective that the meanings of words and actions are to some degree dependent on the particular social and historical conditions in which they occur").

[8] Nelson v. Enid Medical Associates, Inc., 2016 OK 69, ¶ 52, 376 P.3d 212, 228-229 (while chronological correlation of historical events does not demonstrate causation, the events may be used in support of a causality argument using additional and consistent authority); Childs v. State of Oklahoma, 1993 OK 18, 848 P.2d 571, 574 (Court explained the issue presented required an examination of a statutory amendment in light of the statute's "legislative history and of our extant jurisprudence that construes the earlier versions in the factual context of decided cases"). See also Rogers v. Quiktrip, 2010 OK 3, 230 P.3d 853 at note 37 infra, and In re Guardianship of Stanfield, 2012 OK 8, 276 P.3d 989, at note 38 infra.

[9] 12 O.S.Supp.2013 (E) & (F):

"E. Except as provided by subsection F of this section, beginning November 1, 2009, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date which is twenty-four (24) months after the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. No prejudgment interest shall begin to accrue until twenty-four (24) months after the suit resulting in the judgment was commenced. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year which is twenty-four (24) months after the suit resulting in the judgment was commenced. This rate shall be in effect until the end of the calendar year in which interest begins to accrue or until the date judgment is filed, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of all prejudgment interest has been completed, the total amount of prejudgment interest shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection A of this section.

F. If a verdict of the type described by subsection E of this section is rendered against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection B of this section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act."

[10] 12 O.S.Supp.2013 § 727.1 (G): "If exemplary or punitive damages are awarded in an action for personal injury or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another, the interest on that award shall begin to accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk."

[11] 12 O.S.Supp.2013 § 727.1 (H): "If a judgment is rendered establishing the existence of a lien against property and no rate of interest exists, the court shall allow prejudgment interest at a rate prescribed pursuant to subsection I of this section from the date the lien is filed to the date of verdict."

[12] 12 O.S.Supp. § 7272.1(K): "For purposes of computing prejudgment interest, the provisions of this section shall be applicable to all actions which are filed in the district courts on or after January 1, 2010, for which an award of prejudgment interest is authorized by the provisions of this section."

[13] Okla. Sess. Laws 2015, c. 263, § 3 (eff. May 6, 2015).

[14] Neither taxpayers nor the county assessor cite or distinguish the 2011 and 2015 versions of 68 O.S. § 2884 for application to this controversy, and we quote the 2015 version herein. We need not address the issue of an amendment to a statute involving interest. Cf. Fleming v. Baptist General Convention of Oklahoma, 1987 OK 54, 742 P.2d 1087, and also 742 P.2d at 1099-1105 (Kauger, J., concurring, and joined by Doolin, C.J., Hodges, and Wilson, JJ.) (discussion of previous opinions by the Court on effect of a statutory amendment to interest). Similarly, we need not settle the debate whether interest should be considered "entirely contingent upon legislative prescription" (Id. 742 P.2d at 1103), or also subject to cognizance in equity as a form of damages as discussed herein; since the mere disagreement on these and related issues, as opposed to a technically correct or incorrect judicial pronouncement, is what helped steer state legislatures into settling interest issues, such as our legislature has addressed since the 1980s. See authority cited at note 46, infra, on the issue of interest predicated on a statute.

[15] 68 O.S.Supp.2019 § 2880.1 (A), states in part: "Both the taxpayer and the county assessor shall have the right of appeal from any order of the county board of equalization to the district court of the same county, and right of appeal of either may be either upon questions of law or fact including value, or upon both questions of law and fact."

[16] 68 O.S.Supp.2019 § 2880.1 (C), states in part: "Either the taxpayer or the county assessor may appeal from the district court to the Supreme Court, as provided for in the Code of Civil Procedure, but no matter shall be reviewed on such appeal which was not presented to the district court."

[17] 68 O.S.Supp.2015 § 2884 (C).

[18] 68 O.S.Supp.2015 § 2884 (C).

[19] 68 O.S.Supp.2015 § 2884 (C).

[20] 68 O.S.Supp.2015 § 2884 (E)(1) (taxpayers other than railroads, air carriers, or public service corporations), states in part: ". . . if upon the final determination of any such appeal, the court shall find that the property was assessed at too great an amount . . . The difference between the amount paid and the correct amount payable, with accrued interest, shall be refunded by the treasurer to the taxpayer upon the taxpayer filing a proper verified claim therefor, and the remainder paid under protest, with accrued interest, shall be apportioned as provided by law."

[21] Smicklas v. Spitz, 1992 OK 145, 846 P.2d 362; Matter of Phillips Petroleum Co., 1982 OK 112, 652 P.2d 283, 285.

[22] McNeill v. City of Tulsa, 1998 OK 2, ¶9, 953 P.2d 329, 332.

[23] City of Tulsa v. State ex rel. Public Employees Relations Bd., 1998 OK 92, ¶14, 967 P.2d 1214, 1220.

[24] Independent School Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 97 & n. 183, 473 P.3d 475, 516, citing Maule v. Indep. Sch. Dist. No. 9, 1985 OK 110, 714 P.2d 198, 203.

[25] World Publishing Co. v. Miller, 2001 OK 49, ¶ 7, 32 P.3d 829, 832.

[26] Matter of Estate of Foresee, 2020 OK 88, ¶ 14, 475 P.3d 862, 867. See also World Publishing Co. v. Miller, 2001 OK 49, ¶ 7, 32 P.3d 829, 832 ("Only where the legislative intent cannot be ascertained from the statutory language, i.e., in cases of ambiguity or conflict, are rules of statutory construction employed."); CompSource Mut. Ins. Co. v. State ex rel. Okla. Tax Comm'n, 2018 OK 54, ¶ 23, 435 P.3d 90, 100. ("Rules of construction are applied to determine legislative intent when the statutory language is ambiguous or its meaning uncertain.").

[27] CompSource Mut. Ins. Co. v. State ex rel. Okla. Tax Comm'n, 2018 OK 54, ¶ 52, 435 P.3d 90, 108.

[28] Humphries v. Lewis, 2003 OK 12, n.4, 67 P.3d 333, 336. Cf. Hamilton v. Northfield Insurance Company, 2020 OK 28, ¶ 8, 473 P.3d 22, 26 ("Every provision of every Oklahoma statute 'is presumed to have been intended for some useful purpose and every provision should be given effect.'"), quoting Darnell v. Chrysler Corp., 1984 OK 57, ¶ 5, 687 P.2d 132, 134.

[29] Kohler v. Chambers, 2019 OK 2, ¶ 6, 435 P.3d 109, 111. See also Holley v. Ace Am. Ins. Co., 2013 OK 88, ¶ 5, 313 P.3d 917, 920 (statutory construction presents a question of law); Independent School Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 17, 473 P.3d 475, 485 (an issue of law is presented by questions concerning the application of a statute to an uncontested fact and de novo appellate review is used by the Court).

[30] Strelecki v. Oklahoma Tax Commission, 1993 OK 122, n. 71, 872 P.2d 910, 920, citing Neumann v. Tax Com'n, 1979 OK 64, 596 P.2d 530, 532; Wilson v. State ex rel. Okl. Tax Com'n, Okl., 1979 OK 62, 594 P.2d 1210, 1212.

[31] Magnolia Pipe Line Co. v. Oklahoma Tax Commission, 1946 OK 113, 167 P.2d 884, 887, citing State ex rel. Oklahoma Employment Security Commission v. Tulsa Flower Exchange, 1943 OK 109, 135 P.2d 46, Sutherland, Statutory Construction, 3d Ed., § 6701, and Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917).

[32] An analogous situation occurs with judicial construction of a penal statute when applied to a party aggrieved by the statute. See, e.g., So--Lo Oil Company, Inc. v. Total Petroleum, Inc., 1992 OK 71, 832 P.2d 14, 18-19 (strict construction required for a penal statute means, in part, the statute is not to be extended by implication beyond the meaning of the words used by the legislature); Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, n. 7, 270 P.3d 113, 119, citing Houck v. Hold Oil Corp., 1993 OK 167, 867 P.2d 451, 459 (strict construction of a penal statute means, in part, that the situations subjecting an individual to the statutory penalty should not be enlarged by judicial construction).

[33] Neer v. State ex rel. Oklahoma Tax Comm'n, 1999 OK 41, ¶ 16, 982 P.2d 1071, 1078 ("the rule that tax statutes are to be construed in favor of the taxpayer does not apply if the statute(s) at issue contain no inconsistent provisions, no ambiguities, and no uncertainties.").

[34] Muskogee Fair Haven Manor Phase I, Inc. v. Scott, 1998 OK 26, ¶¶ 17-20, 957 P.2d 107, 112-114.

[35] See, e.g., Atkinson v. Gurich, 2011 OK 12, ¶ 2, ¶ 14, 248 P.3d 356, 357, 361 (in the absence of a dispute over the valuation of household personal property and a request by the taxpayer, 68 O.S.2001 § 2818(C)(1) and (D) did not authorize the County Assessor to enter residential property; and (2) 12 O.S. Supp.2008 § 3234(A)(2) of the Oklahoma Discovery Code did not provide an exception when entry to residential property is otherwise explicitly precluded by statute; and (3) the general provision of the Discovery Code did not control the language in the ad valorem statute).

[36] Ball v. Multiple Injury Trust Fund, 2015 OK 64, ¶ 6, 360 P.3d 499, 502 ("In determining legislative intent, this Court will not limit consideration to one word or phrase but will consider the context of the ambiguous provision."), quoting St. John Med. Ctr. v. Bilby, 2007 OK 37, ¶ 6, 160 P.3d 978, 979.

[37] See, e.g., Rogers v. Quiktrip, 2010 OK 3, ¶ 13, 230 P.3d 853, 860 (when examining whether an irreconcilable conflict was present in current statutory language the Court explained the purpose of an enactment created by the legislature in 1933); Berry v. Public Employees Retirement System, 1989 OK 14, 768 P.2d 898, 899 (any doubt as to the meaning of a statute may be resolved by reference to its history), citing Lekan v. P & L Fire Protection Co., 1980 OK 56, 609 P.2d 1289, 1292.

[38] See, e.g., In re Guardianship of Stanfield, 2012 OK 8, ¶¶ 12-20, 276 P.3d 989, 994-999 (discussion of 1924 legislation in the context of then contemporary court opinions, and how this authority related to application of current statutes which included subsequent codification of the 1924 legislation).

[39] Nation v. State Farm Ins. Co., 1994 OK 54, 880 P.2d 877, 879 (principle stated in the context of construing an insurance statute), citing Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, 1987 OK 121, 747 P.2d 947, 952.

[40] Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) (The Tax Injunction Act is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."); Hibbs v. Winn, 542 U.S. 88, 104, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) (The Act has two objectives, (1) eliminating disparities between out-of-state taxpayers seeking relief in federal court and resident taxpayers seeking relief in state court, and (2) to stop taxpayers from using a federal injunction to withhold large sums from the state); Okla. ex rel. Okla. Tax Comm'n v. Int'l Reg. Plan, Inc., 455 F.3d 1107, 1112 (10th Cir.2006) (discussing Hibbs); Coleman ex rel. Bunn v. District of Columbia, 70 F. SupP.3d 58, 66-68 (D.D.C. 2014) (same).

[41] 15 O.S. 2011 § 264A.

[42] H. B. Krug v. Helmerich & Payne, Inc., 2015 OK 74, ¶ 23 & n. 26, 362 P.3d 205, 214, citing Withrow v. Red Eagle Oil Co., 1988 OK 16, ¶ 8, 755 P.2d 622; West Virginia v. U.S., 479 U.S. 305, 310, n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987).

[43] H. B. Krug v. Helmerich & Payne, Inc., 2015 OK 74, at ¶ 23 & n. 27, 362 P.3d at 214. See, e.g., Shanbour v. Phillips 66 Natural Gas Co., 1993 OK 128, 864 P.2d 815 ("Interest as such is only recoverable under terms of a contract; but an award of interest for the detention of payment is made by way of damages.").

[44] Phillips v. Hedges, 2005 OK 77, ¶ 13, 124 P.3d 227, 231-232, citing May--Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co., 1999 OK 87, ¶ 4, 20 P.3d 135, 142--43 (supplemental opinion on rehearing) (explaining the amount of prejudgment interest, as an item of damages, must be stated in the judgment).

[45] Walker v. St. Louis-San Francisco Ry. Co., 1983 OK 86, 671 P.2d 672, 673.

[46] Withrow v. Red Eagle Oil Co., 1988 OK 16, ¶ 8, 755 P.2d 622, 625, citing Sisney v. Smalley, 1984 OK 70, 690 P.2d 1048, 1050. See, e.g., Matter of Rochester Carting Co. v. Levitt, 36 N.Y.2d 264, 367 N.Y.S.2d 242, 326 N.E.2d 808, 810-811 (1975) (at common law prejudgment interest existed in a narrow category of claims for the purpose of providing full compensation for a loss, but postjudgment interest is a creature of statute and a penalty for delayed payment on a judgment).

[47] Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835--836, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); Andrulonis v. U.S., 26 F.3d 1224, 1230 (2d Cir. 1994) (discussing federal postjudgment statute).

[48] Phillips v. Hedges, 2005 OK 77, ¶ 13, 124 P.3d at 231 (postjudgment interest is "a continuing obligation that runs at the statutory rate from the date of judgment until paid...and need not be reduced to a lump sum and included in a judgment") (material omitted from quote).

[49] Vilbig Const. Co. v. Whitham, 1948 OK 272, 201 P.2d 922, 932-933 (in an equitable proceeding for an accounting the Court granted equitable postjudgment interest, but dating from the date of the appellate mandate in the Supreme Court).

[50] Compare Kubatzky v. Pittsburg Plate Glass Co., 1926 OK 734, 249 P. 412 (in action for debt due and to foreclose a lien the trial court applied the incorrect interest rate on judgment based upon the postjudgment interest statute, Comp.Stat. 1921 § 5105), with Whitehead v. Whitehead, 1999 OK 91, n. 6, 995 P.2d 1098, 1101 ("Because the distinction between suits in law and equity have been abolished in this state, the terms 'decree' and 'judgment' are interchangeable."). Cf. Johnson v. Hazen, 333 Mass. 636, 132 N.E.2d 391, 393, 54 A.L.R.2d 810 (1956) ("It is well established that an equity decree for the payment of money is a judgment made upon a finding of a judge and thus bears interest from the date of the judgment or award to the date the judgment is satisfied.") citing East Tennessee Land Co. v. Leeson, 185 Mass. 4, 69 N.E. 351, 352 (1904); Missouri--Kansas Pipe Line Co. v. Warrick, 25 Del.Ch. 388, 22 A.2d 865, 868 (1941) ("A decree of an equity court for the payment of money does not differ essentially from a like judgment in a court of law; . . . It follows that a decree in the Court of Chancery for the payment of money bears interest from the date of its entry.") (material omitted).

[51] C. O. S. 1921, § 420.

[52] Grubb v. Smiley, 1929 OK 533, 283 P. 784, 786.

[53] Compare the statutory requirement for payment of the amount of tax assessed with the requirement for payment of the illegal assessment in former equity procedure. 68 O.S.Supp.2015 § 2884; 1915 Okla. Sess. Laws, Ch. 107, Art. 1, Subdiv. B, § 2 (1915 Okla. Sess. Laws at pg. 176-177); 1 Pomeroy's Equity Jurisprudence, § 393, pgs. 650-651 (Bancroft-Whitney, 3d ed. 1905) ("In states where a court of equity exercises a jurisdiction to set aside or restrain the collection of illegal assessments or taxes, the relief will not be granted unless the plaintiff pays such portion of the tax or assessment as is lawful and justly due."), citing, in part, People National Bank v. Marye, 191 U.S. 272, 24 S.Ct. 68, 48 L.Ed. 180 (1903); Board of Commissioners v. Elston, 32 Ind. 27, 2 Am. Rep. 327 (1869); Smith v. Humphrey, Auditor General, 20 Mich. 398 (1870); Merrill v. Humphrey, 24 Mich 170 (1871); Morrison v. Hershire, 32 Iowa 271 (1871).

[54] Grubb v. Smiley, 283 P. at 786.

[55] See, e.g., Payne v. Jones, 1944 OK 86, 146 P.2d 113 (Syllabus by the Court) (statutory ad valorem protest procedure has precedence over statute authorizing injunctive relief); Muskogee Fair Haven Manor Phase I, Inc. v. Scott, 1998 OK 26, ¶¶ 1, 13, 957 P.2d 107, 108, 111--112 (due to adequate and exclusive legislatively prescribed judicial remedies afforded to taxpayers by the ad valorem tax code the District Court, a court of "unlimited original jurisdiction," "lacked subject matter jurisdiction" to entertain taxpayers' declaratory judgment action). Cf. National Private Truck Council, Inc. v. Oklahoma Tax Commission, 515 U.S. 582, 589, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) ("Given this principle, we hold that [42 U.S.C.] § 1983 does not call for either federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists.").

[56] See Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, ¶ 25 n. 46, & ¶¶ 26-27, 270 P.3d 113, 127, citing Private Truck Council of Am., Inc. v. Oklahoma Tax Comm'n, 1994 OK 96, 879 P.2d 137, 145 n.2, ([1] Taxpayer could not enjoin the collection of a tax when a statutory remedy for its recovery was available, and in some circumstances a taxpayer could maintain a declaratory judgment action to challenge the facial validity of a tax statute before the tax becomes due or challenge the authority of the assessing entity.), and ([2] Unauthorized or unlawful expenditure of municipal taxes by a city and allegation of unlawful issuance of bonds by a public entity may be addressed by a proceeding brought by a taxpayer seeking equitable relief.) citing Payne v. Jones, 1944 OK 86, 146 P.2d 113, 117, and Stevens v. Fox, 2016 OK 106, ¶ 15, 383 P.3d 269, 275, citing Thomas v. Henry, 2011 OK 53, ¶ 6, 260 P.3d 1251 (In order to have taxpayer standing we have held "a taxpayer possesses standing to seek equitable relief when alleging that violation of a statute will result in illegal expenditure of public funds."). See, e.g., Oklahoma Public Employees Association v. Oklahoma Department of Central Services, 2002 OK 71, ¶ 10, 55 P.3d 1072, 1078 (plaintiffs had standing, as taxpayers, to challenge in equity the alleged wrongful expenditure of public funds); Brandon v. Ashworth, 1998 OK 20, ¶ 7, 955 P.2d 233, 235 (injunction to enjoin illegal use of public money).

[57] Compare, Redbird v. Oklahoma Tax Commission, 1997 OK 126, ¶¶ 10-15, 947 P.2d 525, 527-529 (to be an exclusive state tax remedy it must also be adequate, clear, and certain for a federal constitutional challenge), and Strelecki v. Oklahoma Tax Commission, 1993 OK 122, 872 P.2d 910 (Due Process provision of the Oklahoma Constitution required refund of overpayment of tax when it was not paid under protest and the Tax Commission agreed an adverse judicial decision would apply to non-party taxpayers), and Phillips v. Oklahoma Tax Commission, 1978 OK 34, 577 P.2d 1278 (injunctive state-wide relief ordered to restrain Oklahoma Tax Commission from assessing and collecting a tax when statute violated the U. S. Constitution).

See also Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, nn. 45, 46, & ¶ 25, 270 P.3d 113, 126 (12 O.S. § 1397 injunctive relief "will not supplant statutorily required remedies" but does have a place in the remedial scheme involving a tax) citing Hill v. Kemp, 478 F.3d 1236, 1253--1254 (10th Cir.2007), cert. denied, 552 U.S. 1096, 128 S.Ct. 873, 169 L.Ed.2d 725, cert. den. sub nom. Kemp v. Hill, 552 U.S. 1096, 128 S.Ct. 884, 169 L.Ed.2d 725 (2008) (Tenth Circuit explained remedies in Title 68 Oklahoma Statutes and 12 O.S. § 1397 provided a plain, speedy and efficient remedy for the controversy when court applied the Tax Injunction Act, 28 U.S.C. § 1341).

[58] See Sholer v. State ex rel. Dept. of Public Safety, 1995 OK 150, 945 P.2d 469, 475 (an action to recover unauthorized fees assessed by government entity was for "money had and received," an action which "arises when one has received money which in equity and good conscience should be paid to another," and "[a] claim for a tax refund is an action for money had and received"), citing Estate of Kasishke v. Oklahoma Tax Comm'n, 1975 OK 133, 541 P.2d 848, 853. See also Chapman v. Tulsa Used Lumber & Wrecking Co., 1956 OK 208, 299 P.2d 787, 788 (action filed in the District Court to recover a portion of taxes paid under protest on plaintiff's property is a special statutory proceeding governed by equitable principles) (Syllabus by the Court); Bonaparte v. American Vinegar Mfg. Co., 1932 OK 725, 17 P.2d 441, 445 (a statutory proceeding pursuant to Comp.Stat. 1921 § 9971, when no appeal is provided, to recover taxes paid under protest is in its nature equitable); Muskogee Fair Haven Manor Phase I, Inc. v. Scott, 1998 OK 26, n. 11, 957 P.2d 107 (Comp.Stat.1921 § 9971 contains language or provisions also codified at Okla.Sess.L.1915, p. 149, c. 107, sec. 7; 68 O.S.1941 § 15.50; 68 O.S.Supp.1965 § 2469; and 68 O.S.Supp.1988 § 2886).

[59] In re De-Annexation of Certain Real Property from the City of Seminole, 2007 OK 95, ¶¶ 13-15, 177 P.3d 551, 555-556 (Court has not created an equitable remedy to obtain a tax refund when a taxpayer failed to follow mandatory requirements of procedural tax statutes, and concluding: "It is well settled, however, that equitable defenses will not block the requirements of mandatory procedural tax statutes."), explaining R.R. Tway, Inc. v. Oklahoma Tax Commission, 1995 OK 129, 910 P.2d 972, and citing Apache Corporation v. State of Oklahoma ex rel. Oklahoma Tax Commission, 2004 OK 48, 98 P.3d 1061, 1064; and Whig Syndicate, Inc. v. Keyes, 1992 OK 95, 836 P.2d 1283, 1288. See also Bonaparte v. Tradesmen's Nat. Bank, 1936 OK 41, 53 P.2d 1106 (taxpayer must pursue statutory remedy for an alleged improper tax) (Syllabus by the Court); Weatherly v. Sawyer, 1917 OK 165, 163 P. 717 (statutes providing procedure for challenging assessment or equalization of property provide an exclusive remedy, and an equitable remedy cannot be used) (Syllabus by the Court).

[60] Eaton v. St. Louis & S. F. Ry. Co., 1925 OK 673, 251 P. 1032, overruled on other grounds Mid-Continent Pipe Line Co. v. Seminole County Excise Board, 1944 OK 85, 146 P.2d 996 (Syllabus by the Court).

[61] Eaton, 1925 OK 673, 251 P. at 1039. See also Brown v. Board of Education of City of Duncan, 1930 OK 570, 298 P. 249, 253 (Court held a municipality's claim against county for funds due municipality for three years prior to suit were allowed, but disallowed interest, and quoted a legal encyclopedia for principle that in the absence of a statute a legal claim against a county does not bear interest "nor is the claimant entitled to other compensation by way of penalty of damages for delay in payment.").

[62] Lockwood, Maw, & Rosenberry, The Use of the Federal Injunction in Constitutional Litigation, 43 Harv.L.Rev. 426, 435 (1930).

[63] Lockwood, The Use of the Federal Injunction, etc., 43 Harv.L.Rev. at n. 38, 435.

[64] Hopkins,13 F.2d at 820.

[65] 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939).

[66] Board of Comm'rs of Jackson County, Kansas, v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 84 L.Ed. 313 (1939), (examining whether equity would support an award of interest against a State on a tax refund claim based upon a federal right and brought in a federal court by the United States as a party on behalf of taxpayers, i.e., an intergovernmental dispute), citing United States v. Sanborn, 135 U.S. 271, 281, 10 S.Ct. 812, 815, 34 L.Ed. 112 (1890); Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596 (1914). Cf. Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co., 513 F.3d 949, 961 (9th Cir.2008) (State law generally governs awards of prejudgment interest in diversity actions, but federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law alone.); Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1134 (10th Cir.2002) (prejudgment interest in diversity action is governed by state law).

[67] Prior to review by the U.S. Supreme Court, the controversy in Board of Comm'rs of Jackson County, supra, had been before the United States Court of Appeals for Tenth Circuit, and the Tenth Circuit noted the similarity between the statutes in Kansas and Oklahoma on the issue of not allowing interest on a tax refund. Board of Comm'rs of Jackson County v. United States, 100 F.2d 929, 936 (10th Cir. 1938), modified 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939). See also United States v. Board of Commissioners of Comanche County, 6 F.Supp. 401, 403 (W.D. Okla. 1934) (court stated concerning interest on a tax refund that it "knows of no provision for the payment of interest except by taking the interest from some other fund whose application had been provided by statute").

[68] Kansas v. Colorado, 533 U.S. 1, 14, 121 S.Ct. 2023, 150 L.Ed.2d 72 (2001) citing Jackson Cty., 308 U.S. at 352.

[69] Kansas v. Colorado, 533 U.S. 1, 10-11, 14, 121 S.Ct. 2023, 150 L.Ed.2d 72 (approving the analysis of the Special Master relying on Board of Comm'rs of Jackson Cty. for awarding prejudgment interest as damages).

[70] Board of Commr's of Creek County v. Seber, 130 F.2d 663, 667, 671 (10th Cir. 1942), aff'd, Board of Commr's of Creek County v. Seber, 318 U.S. 705, 709, 63 S.Ct. 920, 87 L.Ed. 1094 (1943) (award of interest not raised in proceeding before the Supreme Court).

[71] Bryan County v. United States, 123 F.2d 782, 786 (10th Cir. 1941), cert. den. 315 U.S. 819, 62 S.Ct. 907, 86 L.Ed. 1216 (1942).

[72] State ex rel. Com'rs of Land Office v. Warden, 242 P.2d at 131, citing Bryan County v. United States, 123 F.2d at 786.

[73] State ex rel. Com'rs of Land Office v. Warden, 242 P.2d at 131 (referencing 15 O.S.1941 § 274 and the language quoted therefrom: "All judgments of courts of record and justices of the peace shall bear interest from the date on which they are rendered at the rate of six per cent. per annum").

[74] 15 O.S.1941 § 274 is identical to 15 O.S.1951 § 274.

[75] The 1951 version is cited in the Court's Syllabus in State ex rel. Oklahoma Employment Security Commission v. Sanders, 1956 OK 262, 304 P.2d 287, and the 1941 version is referenced in the opinion, 304 P.2d at 288.

15 O.S.1951 § 274:

All judgments of courts of record and justices of the peace shall bear interest from the day on which they are rendered at the rate of six per cent. per annum: Provided, that when a rate of interest is specified in any contract, that rate shall continue until full payment is ade, and any judgment rendered on any such contract shall bear the same rate of interest mentioned in the contract, which rate shall be specified in the judgment; but in no case shall such rate exceed the legal contract rate at the date of such obligation.

[76] State, etc. v. Sanders, 304 P.2d at 288 (citation omitted).

[77] 40 O.S.1951 § 224 (g) (Appeals).

[78] State, etc. v. Sanders, 304 P.2d at 289 (40 O.S.1951 § 224(d) authorizing an employer to proceed for recovery of erroneous overpayments of unemployment taxes, and 68 O.S.1951 § 15.50, providing a remedy for when the alleged illegality of a tax had no remedy by appeal of assessment or otherwise as provided by statute).

[79] State, etc. v. Sanders, 304 P.2d at 289.

[80] 68 O.S.1951 § 15.48 (appeal of assessment as too high), required "the full amount of the taxes assessed" to be "paid at the time and in the manner provided by law," notice to the county treasurer that "the tax or a specified portion thereof, is being paid under protest," the county treasurer "to hold such taxes so paid under protest separate and apart from other taxes;" and if the appeal is successful for the taxpayer and after certification of the corrected valuation sent to the county treasurer from the assessor, then "[t]he difference between the amount paid and the correct amount payable shall be refunded by the Treasurer to the taxpayer upon his filing a proper verified claim therefor, and the remained paid under protest shall be apportioned as provided by law."

[81] 68 O.S.1951 § 15.50 (challenge when no appeal was provided by statute) required payment of "the full amount of the taxes at the time and in the manner provided by law," "notice to the officer collecting the taxes," "the duty of such collecting officer to hold such taxes separate and apart from all other taxes;" and upon a successful challenge to the tax; "the collecting officer shall pay to such person [taxpayer] the excess and shall take his receipt therefor."

[82] 28 U.S.C. § 1341 (as amended since June 25, 1948, c. 646, 62 Stat. 932): "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Cf. Ann Woolhandler, The Common Law Origins of Constitutionally Compelled Remedies, 107 Yale L.J. 77, 132-144, 144 (1997) (explains remedies prior to the Tax Injunction Act [TIA], federal injunctions and federal court actions for damages based upon unconstitutional state taxes, required remedies in state courts, and by the TIA "Congress explicitly directed that the adequacy of remedies available in state court would preclude federal equity jurisdiction.").

[83] United States v. Livingston, 179 F.Supp. 9, 15 (E.D.S.C.1959) (three-judge court), aff'd per curiam, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960). Cf. Abernathy v. Carpenter, 208 F.Supp. 793, 796-97 (W.D.Mo.1962), (small amount of potential interest was not a sufficient sum to render the state remedy less plain, speedy or efficient), aff'd mem., 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963).

[84] Mullaney v. Hess, 189 F.2d 417, 420 (9th Cir. 1951), and Southern California Telephone Co. v. Hopkins, 13 F.2d 814 (9th Cir. 1926), affirmed, Hopkins v. Southern California Telephone Co., 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329 (1928).

[85] Hopkins,13 F.2d at 820 (explained that by the laws of California one who recovered a wrongfully collected tax paid under protest could not recover interest until after judgment, and made a comparison to Judge Hand's opinion in Proctor & Gamble, supra).

[86] United States v. Livingston, 179 F.Supp. at n. 12, 15, citing Proctor & Gamble Distributing Co., supra. See also Hopkins, 13 F.2d at 820, quoting Proctor & Gamble Distributing Co., supra.

[87] 604 F.2d 530 (7th Cir.1979).

[88] The U.S. Court of Appeals for the Seventh Circuit equated the pre-1937 standard for equity practice adjudicating adequacy of the remedy with the standard used by the Tax Injunction Act. 604 F.2d at n. 4, 533. When the opinion was reviewed in Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 526, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), the Court stated: "Congress did not equate § 1341's 'plain, speedy and efficient' with equity's 'plain, adequate and complete.'" However, the Court then stated in Fair Assessment in Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, n.8, 116, 102 S. Ct. 177, 186, 70 L. Ed. 2d 271, 283 (1981): "We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are 'plain, adequate, and complete,' as that phrase has been used in articulating the doctrine of equitable restraint, and those which are 'plain, speedy and efficient,' within the meaning of § 1341."

[89] LaSalle National Bank v. Rosewell, 604 F.2d at 536-37.

[90] Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 514-516, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

[91] Murray v. McDonald, 988 F.Supp. 420, 424 (D.Vt.1997) (court reasoned "a federal suit challenging the refusal to pay interest is barred by the Tax Injunction Act unless Plaintiffs have no plain, speedy and efficient remedy in the state court," but plaintiffs possessed a remedy which satisfied the Act).

[92] See, e.g., Ogilvie v. State Bd. of Equalization, 893 F.Supp. 882, n. 3, 884 (D. N.D. 1995), (federal court had jurisdiction to address taxation issue pursuant to the federal Railroad Revitalization and Regulatory Reform Act of 1976, and Tax Injunction Act did not apply).

[93] But see, Plain, Speedy, and Efficient Nature of State Remedy Under Tax Injunction Act (28 U.S.C.A. § 1341) Prohibiting Federal District Courts from Interfering with Assessment, Levy, or Collection of State Real Property Taxes, 19 A.L.R. Fed. 2d 383 (2007); Construction and Application of Hibbs [v. Winn, 542 U.S. 88] Exception to Tax Injunction Act, 28 U.S.C.A. § 1341, 16 A.L.R. Fed. 2d 353 (2007); What constitutes "tax" under Tax Injunction Act (28 U.S.C.A. §1341), which prohibits federal district courts from interfering with assessment, levy, or collection of state taxes, 151 A.L.R. Fed. 387 (1999).

[94] Cf. Wiand v. Cloud, 919 F.SupP.2d 1319, 1341-1342 (M.D.Fla.2013) (in exercise of supplemental jurisdiction [28 U.S.C. § 1367] court invoked the Rules of Decision Act [Judiciary Act of 1789, 28 U.S.C. § 1652], applied Florida jurisprudence on equity of awarding prejudgment interest, and denied interest to receiver in a clawback of ponzi profits).

[95] Cf. Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co., 513 F.3d 949, 961 (9th Cir.2008) (federal law on prejudgment interest applies when a substantive claim derives from federal law); F.D.I.C. v. Rocket Oil Company, 865 F.2d 1158 (10th Cir.1989) (applying Board of Comm'rs of Jackson County, supra, and stating in a federal question case the federal law on prejudgment interest applies) Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1134 (10th Cir.2002) (prejudgment interest in diversity action is governed by state law).

[96] Ball, 82 Cal.App.3d at 316, 147 Cal.Rptr. at 254, citing Annot., Right to Interest on Tax Refund or Credit in Absence of Specific Controlling Statute, 88 A.L.R.2d 823, 825-827, 835-840 (1963).

[97] Ball, 82 Cal.App.3d at 317, 147 Cal.Rptr. at 254, citing Monarch Mills v. South Carolina Tax Commission, 49 S.C. 219, 146 S.E. 870, 872 (1929); Tripp v. Swoap (1976) 17 Cal.3d 671, 683, 131 Cal.Rptr. 789, 552 P.2d 749, overruled on other grounds Frink v. Prod (1982) 31 Cal.3d 166, 181 Cal.Rptr. 893, 643 P.2d 476.

[98] United States v. Sherman, 98 U.S. [8 Otto] 565, 567-568, 25 L.Ed. 235 (1879).

[99] City of Bethany v. Public Employees Relations Bd. of State of Oklahoma, 1995 OK 99, 904 P.2d 604, 612 (legislature's responsibility for declaring public policy in the absence of guidance from the state constitution); Civil Aeronautics Board v. Delta Airlines, 367 U.S. 316, 321-322, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961) (resolution of conflicting policies is based upon Congress, not administrative agency); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 609--610, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Frankfurter, J., concurring) (Congress defines the weight given to competing interests, and court of equity may not ignore that weight under the guise of exercising equitable discretion.).

[100] Ball, 82 Cal.App.3d at 317, 147 Cal.Rptr. at 255, citing Lakefront Realty Corporation v. Lorenz, 19 Ill.2d 415, 167 N.E.2d 236, 240-241 (1960) (collecting cases showing split of authority on the issue of a right to interest on a tax refund, and explaining "in the practical aspects of the circumstances that a tax collector, being a mere trustee of public funds collected for specific purposes, has no money to pay interest in the absence of statutory authority to establish a fund for that purpose").

[101] Ball, 82 Cal.App.3d at 317, 147 Cal.Rptr. at 255, citing New England Mut. Life Ins. Co. v. Reece, 169 Tenn. 84, 83 S.W.2d 238, 242 (1935); Kaemmerling v. State, (1924) 81 N.H. 405, 128 A. 6, 7 (1924); Richter v. Board of Supervisors (1968) 259 Cal.App.2d 99, 105, 66 Cal.Rptr. 52.

[102] Bd. of Educ., Woodward Pub. Schools, 665 P.2d at 331.

[103] City of Oklahoma City v. Oklahoma Tax Commission, 1990 OK 27, 789 P.2d 1287, 1291.

[104] Phillips v. Washington Legal Foundation, 524 U.S. 156, n. 5, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (stating principle and collecting citations from different states including Board of Educ., Woodward Public Schools v. Hensley, 1983 OK CIV APP 31, 665 P.2d 327).

[105] 12 O.S.1981 Ch. 15, App. 1, Rules of the Supreme Court, Rule 27, Policy on Publication of Appellate Opinions, adopted Sept. 24, 1973 (an opinion released for publication by the presiding judge of a division of the Court of Civil Appeals is considered to have persuasive effect and not precedential when the opinion is not "specifically authorized" for publication by the Supreme Court).

[106] 68 O.S.1981 § 2469, provided in part: "If, upon final determination of any such suit, the court shall determine that the taxes were illegally collected, as not being due and owing, the court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor."

[107] Bison, 738 P.2d at 148, stating the tax years at issue.

[108] 1987 Okla. Sess. Laws, Ch. 15, § 1 (emerg. eff. April 13, 1987), codified at 68 O.S.Supp.1987 § 2467 (emphasis added).

[109] The Ad Valorem Tax Code appeared in 68 O.S. 1981 §§ 2401-24100 (Article 24 of Title 68), and was then repealed and renumbered by 1988 Okla. Sess. Laws Ch. 162 (Article 28 of Title 68). See "Disposition Table" for Article 28 of Title 68 immediately preceding 68 O.S.2011 § 2801.

[110] 68 O.S.Supp.1989 § 2884, states in part: "The difference between the amount paid and the correct amount payable with accrued interest shall be refunded by the treasurer to the taxpayer upon his filing a proper verified claim therefor, and the remainder paid under protest with accrued interest shall be apportioned as provided by law."

[111] 68 O.S.Supp.2000 § 2886 (§ 2886 amended by 2000 Okla. Sess. Laws Ch. 157):

In all cases where illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes and give notice of any lawsuit by such person at the time an in the manner provided by Section 2884 of this title. It shall be the duty of the county treasurer to hold, invest and disburse such taxes only in the manner provided for by Section 2884 of this title.

[112] 68 O.S.1991 § 2884 (B); 68 O.S.2001 § 2884 (C) (protested taxes shall be invested) & (E)(1) & (2) (accrued interest refunded).

[113] 68 O.S.Supp.2008 § 2884(C) & (E) (1) & (2); 68 O.S.2011 § 2884(C) & (E) (1) & (2); 68 O.S.Supp.2015 § 2884(C) & (E) (1) & (2).

[114] 68 O.S.2001 § 2884 (C).

[115] 68 O.S 2001 § 2884 (C), amended by 2008 Okla. Sess. Laws, Ch. 416, § 1.

[116] See, e.g., Pacific Gas & E. Co. v. San Francisco, 211 F. 202, 204 (N.D. Cal. 1913) (money deposited for an indefinite period of time pending litigation and upon conclusion thereof paid to the owner with a nominal rate of interest earned during the litigation appears to some as inequitable).

[117] Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, n. 6, 270 P.3d 113, 118 (if a statute is plain, clear and unambiguous, then no reason exists to use rules of construction to determine meaning); Lang v. Erlanger Tubular Corp., 2009 OK 17, ¶ 8, 206 P.3d 589, 591 (our primary goal when construing a statute is to follow the intent of the legislature, and the Court will apply the meaning expressed by the language when the statute is plain, unambiguous, and its meaning clear); Metropolitan Life Ins. Co. v. Lillard, 1926 OK 51, 248 P. 841, 844 (when the legislature has spoken by statutory enactment, this Court applies the statute in the controversy unless the statute violates state or federal constitutions).

[118] Sautbine v. Keller, 1966 OK 209, 423 P.2d 447, 451.

[119] For example, ad valorem taxes paid and protested for the tax year 2012 were $85,648 for parcel 8400, and $7,544 for parcel 8330. Similar amounts were paid for the 2013, 2014, and 2015 tax year protests and all of the protests were consolidated into one proceeding. O.R. Vol. 2, pgs. 250-273, Journal Entry of Judgment (December 13, 2016).

[120] Varner v. Aboussie, 1964 OK 254, 397 P.2d 494, 496 (Equitable relief of injunction will be denied when the injury is so slight as to bring the case within the maxim de minimis non curat lex, often explained as signifying the law takes no notice of trifling matters.); Black's Law Dictionary, 482 (4th Ed.1951) (de minimis non curat lex, "The law does not care for, or take notice of, very small or trifling matters.").

[121] Phillips v. Hedges, 2005 OK 77, ¶ 13, 124 P.3d 227, 231-232, discussing May--Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co., 1999 OK 87, 20 P.3d 135, 142--143 (supplemental opinion at ¶ 4, explaining court-ordered or adjudicated child support payment does not become a judgment by operation of law [43 O.S.2001, § 137(A)] until the date it becomes past due, and postjudgment interest begins to accrue immediately upon the payment becoming delinquent).

[122] Oklahoma City Zoological Trust v. State ex rel. Pub. Employees Relations Bd., 2007 OK 21, ¶ 6, & n.10, 158 P.3d 461, 464, quoting Dodd v. U.S., 545 U.S. 353, 359, 125 S.Ct. 2478, 162 L.E.2d 343 (2005). Cf. Head v. McCracken, 2004 OK 84, ¶ 13, 102 P.3d 670, 680 (when a court construes a statute, the court has no authority to rewrite the enactment merely because it does not comport with the court's view of prudent public policy).

[123] CompSource Mut. Ins. Co. v. State ex rel. Okla. Tax Comm'n, 2018 OK 54, ¶ 51 & ¶¶ 49-52, 435 P.3d 90, 107-108, citing Price v. State ex rel. Oklahoma Tax Commission, 1998 OK 99, 968 P.2d 1227.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2019 OK CIV APP 2, 432 P.3d 1071, IN THE MATTER OF THE ASSESSMENT FOR TAX YEAR 2012 OF CERTAIN REAL PROPERTIES
Discussed at Length
 1983 OK CIV APP 31, 665 P.2d 327, Board of Educ., Woodward Public Schools, Independent School Dist. No. 1, Woodward County v. Hensley
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 46, 738 P.2d 147, 58 OBJ 1576, Bison Nitrogen Products Co. v. Lucas
Discussed
 1987 OK 47, 738 P.2d 151, 58 OBJ 1574, Johnson v. District Court of Oklahoma County
Cited
 1987 OK 54, 742 P.2d 1087, 58 OBJ 1828, Fleming v. Baptist General Convention of Oklahoma
Discussed
 1987 OK 121, 747 P.2d 947, 58 OBJ 3434, Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.
Discussed
 1988 OK 16, 755 P.2d 622, 59 OBJ 531, Withrow v. Red Eagle Oil Co.
Discussed at Length
 1989 OK 14, 768 P.2d 898, 60 OBJ 260, Berry v. State ex rel. Oklahoma Public Employees Retirement System
Discussed
 1990 OK 27, 789 P.2d 1287, 61 OBJ 858, City of Oklahoma City v. Oklahoma Tax Com'n
Discussed
 1992 OK 71, 832 P.2d 14, 63 OBJ 1622, So-Lo Oil Co., Inc. v. Total Petroleum, Inc.
Discussed
 1992 OK 95, 836 P.2d 1283, 63 OBJ 1926, Whig Syndicate, Inc. v. Keyes
Discussed
 1992 OK 145, 846 P.2d 362, 63 OBJ 3023, Smicklas v. Spitz
Discussed
 1993 OK 18, 848 P.2d 571, 64 OBJ 745, Childs v. State ex rel. Oklahoma State University
Discussed
 1993 OK 122, 872 P.2d 910, 64 OBJ 2885, Strelecki v. Oklahoma Tax Com'n
Discussed at Length
 1993 OK 128, 864 P.2d 815, 64 OBJ 2958, Shanbour v. Phillips 66 Natural Gas Co.
Discussed
 1993 OK 166, 867 P.2d 451, 65 OBJ 23, Houck v. Hold Oil Corp.
Cited
 1948 OK 272, 201 P.2d 922, 201 Okla. 86, VILBIG CONST. CO. v. WHITHAM
Discussed
 1994 OK 96, 879 P.2d 137, 65 OBJ 2539, Private Truck Council of America, Inc. v. Oklahoma Tax Com'n
Discussed
 1994 OK 54, 880 P.2d 877, 65 OBJ 1837, Nation v. State Farm Insurance Co.
Discussed
 1997 OK 12, 932 P.2d 1130, 68 OBJ 586, In re Holt
Discussed
 2001 OK 49, 32 P.3d 829, 72 OBJ 1807, WORLD PUBLISHING CO. v. MILLER
Discussed at Length
 1946 OK 113, 167 P.2d 884, 196 Okla. 633, MAGNOLIA PIPE LINE CO. v. OKLAHOMA TAX COMM'N
Discussed
 1936 OK 41, 53 P.2d 1106, 175 Okla. 530, BONAPARTE v. TRADESMEN'S NAT'L BANK
Discussed
 1917 OK 165, 163 P. 717, 63 Okla. 155, WEATHERLY v. SAWYER
Discussed
 1956 OK 208, 299 P.2d 787, CHAPMAN v. TULSA USED LUMBER & WRECKING COMPANY
Discussed
 1956 OK 262, 304 P.2d 287, STATE v. SANDERS
Discussed at Length
 1932 OK 725, 17 P.2d 441, 161 Okla. 54, BONAPARTE Co. Treas. et al v. AMERICAN VINEGAR MFG. CO.
Discussed
 1999 OK 87, 20 P.3d 135, 70 OBJ 3149, May-Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co.
Discussed at Length
 1964 OK 254, 397 P.2d 494, VARNER v. ABOUSSIE
Discussed
 1966 OK 209, 423 P.2d 447, SAUTBINE v. KELLER
Discussed
 2002 OK 71, 55 P.3d 1072, OKLAHOMA PUBLIC EMPLOYEES ASSOCIATION v. OKLAHOMA DEPT. OF CENTRAL SERVICES
Discussed
 1995 OK 99, 904 P.2d 604, 66 OBJ 3071, City of Bethany v. Public Employees Relations Bd. of State of Okl.
Discussed
 1995 OK 129, 910 P.2d 972, 66 OBJ 3710, R.R. Tway, Inc. v. Oklahoma Tax Comm.
Discussed
 1995 OK 150, 945 P.2d 469, 66 OBJ 1818, Sholer v. State ex rel. Department of Public Safety
Discussed
 2003 OK 12, 67 P.3d 333, HUMPHRIES v. LEWIS
Discussed
 2004 OK 48, 98 P.3d 1061, APACHE CORP. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed
 2005 OK 77, 124 P.3d 227, PHILLIPS v. HEDGES
Discussed at Length
 1930 OK 570, 298 P. 249, 148 Okla. 97, BROWN v. BOARD OF ED.
Discussed
 2007 OK 21, 158 P.3d 461, OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed
 2007 OK 37, 160 P.3d 978, ST. JOHN MEDICAL CENTER v. BILBY
Discussed
 2007 OK 95, 177 P.3d 551, IN RE: DE-ANNEXATION OF CERTAIN REAL PROPERTY FROM THE CITY OF SEMINOLE
Discussed
 1929 OK 533, 283 P. 784, 140 Okla. 233, GRUBB v. SMILEY
Discussed
 2009 OK 17, 206 P.3d 589, LANG v. ERLANGER TUBULAR CORP.
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed at Length
 2011 OK 12, 248 P.3d 356, ATKINSON v. GURICH
Discussed
 2011 OK 53, 260 P.3d 1251, THOMAS v. HENRY
Discussed
 2011 OK 57, 270 P.3d 113, TULSA INDUSTRIAL AUTHORITY v. CITY OF TULSA
Discussed at Length
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed at Length
 1975 OK 133, 541 P.2d 848, ESTATE OF KASISHKE v. OKLAHOMA TAX COMMISSION
Discussed
 2013 OK 88, 313 P.3d 917, HOLLEY v. ACE AMERICAN INSURANCE COMPANY
Discussed
 1980 OK 56, 609 P.2d 1289, Lekan v. P & L Fire Protection Co.
Discussed
 2015 OK 64, 360 P.3d 499, BALL v. MULTIPLE INJURY TRUST FUND
Discussed
 2015 OK 74, 362 P.3d 205, KRUG v. HELMERICH & PAYNE, INC.
Discussed at Length
 1978 OK 34, 577 P.2d 1278, PHILLIPS v. OKLAHOMA TAX COM'N
Discussed
 2016 OK 69, 376 P.3d 212, NELSON v. ENID MEDICAL ASSOCIATES, INC.
Discussed
 2016 OK 106, 383 P.3d 269, STEVENS v. FOX
Discussed
 1979 OK 62, 594 P.2d 1210, WILSON v. STATE EX REL. OKL. TAX COM'N
Discussed
 1979 OK 64, 596 P.2d 530, NEUMANN v. TAX COM'N
Discussed
 2018 OK 54, 435 P.3d 90, COMPSOURCE MUTUAL INSUR. CO. v. STATE ex rel. OKLA. TAX COMM. and OKLA. ASSOC. OF ELECTRIC SELF INSURERS FUND v. STATE OF OKLA. TAX COMM.
Discussed at Length
 2019 OK 2, 435 P.3d 109, KOHLER v. CHAMBERS
Discussed
 2019 OK 84, 455 P.3d 918, VIDEO GAMING TECHNOLOGIES v. TULSA COUNTY BD. OF TAX ROLL CORRECTIONS
Discussed
 2020 OK 28, 473 P.3d 22, HAMILTON v. NORTHFIELD INSURANCE CO.
Discussed
 2020 OK 56, 473 P.3d 475, INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed at Length
 2020 OK 88, 475 P.3d 862, IN THE MATTER OF THE ESTATE OF FORESEE
Discussed
 1999 OK 91, 995 P.2d 1098, 70 OBJ 3444, Whitehead v. Whitehead
Discussed
 1925 OK 673, 251 P. 1032, 122 Okla. 143, EATON v. ST. LOUIS-S. F. R. CO.
Discussed at Length
 1926 OK 51, 248 P. 841, 118 Okla. 196, METROPOLITAN LIFE INS. CO. v. LILLARD
Discussed
 1997 OK 126, 947 P.2d 525, 68 OBJ 3329, IN THE MATTER OF INCOME TAX PROTEST OF REDBIRD
Discussed
 1998 OK 2, 953 P.2d 329, 69 OBJ 208, McNEILL v. CITY OF TULSA
Discussed
 1982 OK 112, 652 P.2d 283, Phillips Petroleum Co., Matter of
Discussed
 1926 OK 734, 249 P. 412, 119 Okla. 236, KUBATZKY v. PITTSBURGH PLATE GLASS CO.
Discussed
 1951 OK 334, 242 P.2d 129, 206 Okla. 223, STATE ex rel. COMMISSIONERS OF LAND OFFICE v. WARDEN
Discussed
 1998 OK 20, 955 P.2d 233, 69 OBJ 933, BRANDON v. ASHWORTH
Discussed
 1998 OK 26, 957 P.2d 107, 69 OBJ 1167, MUSKOGEE FAIR HAVEN MANOR v. SCOTT
Discussed at Length
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed
 1998 OK 99, 968 P.2d 1227, 69 OBJ 3504, Price v. State ex rel. Oklahoma Tax Commission
Discussed
 1999 OK 41, 982 P.2d 1071, 70 OBJ 1551, Neer v. State ex rel. Oklahoma Tax Commission
Discussed
 1944 OK 85, 146 P.2d 996, 194 Okla. 40, MID-CONTINENT PIPE LINE CO. v. SEMINOLE CTY. EXCISE BD.
Discussed
 1944 OK 86, 146 P.2d 113, 193 Okla. 609, PAYNE v. JONES
Discussed at Length
 1943 OK 109, 135 P.2d 46, 192 Okla. 293, STATE ex rel. OKLAHOMA EMPL. SEC. COM. v. TULSA FLOWER EXCH.
Discussed
 1983 OK 86, 671 P.2d 672, Walker v. St. Louis-San Francisco Ry. Co.
Discussed
 1984 OK 57, 687 P.2d 132, Darnell v. Chrysler Corp.
Discussed
 1984 OK 70, 690 P.2d 1048, Sisney v. Smalley
Discussed
 1985 OK 110, 714 P.2d 198, 57 OBJ 22, Maule v. Independent School Dist. No. 9 of Tulsa County
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 727.1, Postjudgment Interest on Judgments Rendered After January 1, 2005 - Prejudgment Interest on Actions Filed After January 1, 2010
Discussed at Length
 12 O.S. 1397, Void Judgment, Illegal Tax or Nuisance May Be Enjoined - Petition - No Bond Required
Discussed
 12 O.S. 3234, 12 O.S. 3234, Production of Documents and Things and Entry upon Land for Inspection and Other Purposes
Cited
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 274, Renumbered as 12 O.S. § 727 by Laws 1971, HB 1298, c. 252, § 2
Discussed at Length
 15 O.S. 264A, Interest Defined
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 137, Past Due Support Payments as Judgment - Arrearage Payment Schedule
Cited
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 2467, Repealed
Discussed at Length
 68 O.S. 2469, Repealed
Discussed at Length
 68 O.S. 2801, Short Title
Cited
 68 O.S. 2818, Value of Return
Cited
 68 O.S. 2880.1, Right to Appeal - Notice of Appeal - Duty of District Attorney - Presumption
Discussed at Length
 68 O.S. 2884, Payment of Full Amount of Taxes with Notice to Appeal
Discussed at Length
 68 O.S. 2886, Duty to Pay Taxes Where Illegality of Tax and Laws Provide No Appeal
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA